**STATE of Missouri, Respondent,**

v.

**Ed NIBARGER, Appellant.**

**No. 50910.**

Supreme Court of Missouri,

Division No. 1.

June 14, 1965.

Rehearing Denied July 12, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Wilbur L. Pollard, Sp. Asst. Atty. Gen., North Kansas City, for respondent.

Robert C. Frith, Chillicothe, for defendant-appellant.

HOLMAN, Judge.

Defendant, Ed Nibarger, was charged with the murder (first degree) of Milo Harkins. He was found guilty of manslaughter and his punishment was fixed by the jury at imprisonment in the penitentiary for a term of five years. See §§ 559.010, 559.070, and 559.140 (all statutory references are to RSMo 1959, V.A.M.S.). Defendant has appealed from the ensuing judgment and here contends that the court erred (1) in giving an instruction on manslaughter because there was no evidence to support it, and (2) in excluding certain evidence offered by him.

Defendant admitted that he killed Harkins. His defense was justifiable homicide in that the killing was alleged to have been in the lawful defense of his person.

The defendant lived in the town of Wheeling, Livingston County, Missouri. His 79th birthday occurred on November 25, 1963. He lived with his second wife and had several adult children that had been born to his first marriage and also several that were born of the second marriage, the youngest being Carolyn, aged 16. A number of relatives gathered at defendant's home on November 25 to celebrate his birthday. During the afternoon his daughters, Hazel Overton and Louise Myers, arrived as did his stepdaughter, Nellie Boxx, and Milo Harkins and Harkins' two small sons. Nellie testified that she had been Harkins' housekeeper for two years and had cared for his children. There was other evidence indicating that there may have been a more intimate relationship existing between them. Late in the afternoon defendant's son, Everett Nibarger and wife, Howard Durnell and wife, and Pauline

Poindexter and husband arrived at the Nibarger home.

According to the State's evidence, after dinner, the men sat around the kitchen table and played cards. Some of them were also drinking beer and whiskey. At about 10 p. m., Carolyn came home. Shortly thereafter a number of the guests left. Defendant went outside to bid farewell to those who were leaving. When he returned to the kitchen his wife, Carolyn, Nellie Boxx, and Milo Harkins were sitting at the kitchen table. Defendant started cursing his wife, saying that she was a "no-good bitch and he wouldn't do anything for her." Harkins told him a number of times that he should not talk like that. Defendant then went into his bedroom which adjoined the kitchen and was heard "pushing things around," and was then seen putting a shell into his shotgun. Harkins walked over to the bedroom door and said, "I wouldn't do that if I were you." The gun was then discharged and the witnesses saw Harkins grab his side. He was able to reach the kitchen table and sat down in a chair where he was found to be dead when the officers arrived a short time later. The fatal charge entered Harkins' abdomen a few inches above the navel. Deceased was 28 years old at the time, 6′ 3″ tall, and weighed about 180 pounds.

Carolyn Nibarger and Nellie Boxx both testified for the State. In an effort to impeach these witnesses an attempt was made on cross-examination to show that defendant had told deceased and Nellie Boxx to stay away from his home. Nellie denied that defendant had made such a statement. An effort was also made to show that defendant had frequently told Carolyn that he objected to her going out with married men, staying out late, or staying overnight with Nellie and deceased. Carolyn denied that any such statements had been made to her.

Defendant testified that when he returned to the kitchen deceased said, "I am going to knock your ears down," and that he replied, "You ain't done it yet"; that he then went into his bedroom and deceased "crowded me in there, said he was going to hit me"; that he was back against the north wall and deceased was near the door moving toward him and he then shot him. When asked why he did it, defendant replied, "Just because I didn't want to be killed. * * * I figured if he got hold of me it would be all day for me."

Defendant further testified that on the previous July 4, deceased and Nellie were in his home and he told them to get out; that deceased then hit him and he was unconscious for two hours; that when he regained consciousness no one was at home. Defendant was also permitted to testify, without objection, that he had told deceased and Nellie to stay off the place; that he had told Carolyn a number of times that he objected to her running around with married men, staying out late at night, and objected to her running around with Nellie because "she was no good," and that he didn't want Carolyn visiting Nellie and Harkins.

Defendant's daughter, Alice Wilson, and his son, Everett Nibarger, each testified in his behalf. Their testimony will be referred to hereinafter in connection with certain contentions of error concerning the exclusion of evidence.

As stated, defendant's first point is that there was no evidence to warrant the giving of an instruction on manslaughter and that the court therefore committed prejudicial error in giving such an instruction. We need not determine whether there was evidence which would have supported a manslaughter submission because, even if we assume there was not, the defendant may not complain of that alleged error.

Section 556.220 provides, in part, that "any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher

degree of homicide." Because of the quoted provision, and also on the theory that any error in that regard would be favorable to the defendant, we have repeatedly held that when a submissible case is made as to murder, the defendant is not entitled to complain that there was no evidence to support a given manslaughter instruction of which offense defendant was convicted. State v. Wallach, Mo.Sup., 389 S.W.2d 7; State v. Chamineak, Mo.Sup., 343 S.W.2d 153 [3]; State v. Garrett, Mo.Sup., 282 S.W.2d 441 [3]; State v. Parker, 321 Mo. 553, 12 S.W. 2d 428 [10]. We accordingly rule this point adversely to defendant.

■■ Defendant's remaining contention is that the court erred in refusing to permit testimony on the part of defendant, Everett Nibarger, and Alice Wilson to the effect that defendant stated to Nellie and Harkins that he objected to their presence in his home and also made statements to Carolyn objecting to her conduct in the respects heretofore stated. There is certainly no merit to this contention insofar as it relates to the defendant's testimony. As we have heretofore indicated, he testified as fully as he desired regarding the matters herein mentioned. There was also no error in connection with the testimony of Alice Wilson. Because of technical deficiencies the court sustained some objections which temporarily excluded the evidence, but before her testimony was completed this witness testified that she had heard defendant tell Nellie and deceased that he would rather they would not come to his home; that he had also told Carolyn that he objected to her staying overnight with Nellie and objected to her conduct in other respects.

Everett Nibarger testified that defendant, in the presence of Carolyn, told Nellie and deceased "to go home and stay away from there, that he did not want them dragging Carolyn around, she was too young for that kind of company." However, the following proffered testimony was excluded: "Q. Did you ever hear your father talk to Carolyn about her conduct? A. I heard him try to. Mr. Chapman: Objection, not admissible, the deceased not being present. The Court: The objection sustained. Mr. Frith: The defendant offers to and will prove by this witness that on numerous occasions in the home at Wheeling he has heard Ed Nibarger tell Carolyn Nibarger that he didn't want her to quit school, that he didn't want her to be running around with and staying all night with Mrs. Boxx and Milo Harkins, that he did not want her to be running around with married men and that Carolyn Nibarger at those times would walk out of the room." If we assume that Carolyn resented the objections her father made to her conduct, it would seem that the proffered testimony would have been admissible as tending to prove an adverse feeling against defendant on the part of Carolyn, who was an eyewitness to the shooting and testified for the State. Assuming that the court erred in excluding that testimony we are convinced that the error was not prejudicial. This for the reason that defendant and Alice Wilson both testified that defendant had made statements of that nature to Carolyn. "The improper rejection of evidence is not prejudicial error when the same or substantially the same evidence is otherwise admitted." State v. Wells, Mo.Sup., 305 S.W.2d 457, 459. Moreover, Carolyn testified that she had not spoken to her father since the date of the homicide. That fact was almost conclusive evidence that she did not have the normal feelings of interest and affection that a daughter ordinarily would have for her father. We rule that no reversible error occurred in the exclusion of evidence offered by defendant.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.