STATE of Missouri, Respondent,

v.

Donna Jean FAVELL, Appellant.

No. 36823.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 6, 1976.

---

E. Rex Bradley, St. Charles, for appellant.

Preston Dean, Neil McFarlane, Asst. Attys. Gen., Jefferson City, James Millan, Pros. Atty., Bowling Green, for respondent.

RENDLEN, Judge.

Donna Jean Favell, convicted of manslaughter and sentenced to seven years imprisonment, appeals her conviction.

Appellant contends the trial court erred: (1) by permitting hearsay testimony concerning the circumstances of the attack; (2) by instructing on murder second degree without sufficient evidence to support the charge; and (3) in refusing appellant leave to call a witness on the ground of appellant's failure to disclose the witness' name under V.A.M.R., 25.34.

Don Wolf, an employee of Southwestern Bell Telephone Company, went to the residence of William E. Spahn, a summer cabin near Elsberry, Missouri, on Friday, December 14, 1973, to investigate a telephone trouble report. Knocking several times and believing he heard someone say "come in," Wolf entered the cabin. He found William Spahn lying nude on his back in the middle of the floor in the living room. Wolf asked if he was drunk and Spahn responded, "No, I was shot." On examination Wolf found

Spahn was shot in the upper right shoulder close to the base of the neck. Noting the telephone in the cabin had been ripped from its connection, Wolf went outside and phoned Mr. Tapley at the Elsberry office of the telephone company, who in turn called Officer Don Bizelli of the State Highway Patrol. Tapley and Bizelli drove to the Spahn residence in the officer's automobile. An ambulance was summoned and Mr. Spahn removed to the Pike County Hospital in Louisiana, Missouri. He was later transferred to the Barnes Hospital in St. Louis and six days later, on December 20, died of pneumonia.

Officer Bizelli testified that on arrival at the scene he asked Spahn if he was comfortable. Mr. Spahn requested a drink of water but was told he could have nothing to eat or drink until he reached the hospital. Officer Bizelli then testified to Mr. Spahn's detailed account of the events surrounding the attack. Exclusive of Bizelli's recital of Spahn's statements, there was abundant evidence placing appellant at Spahn's summer home when the shooting occurred including fingerprints and appellant's parent's phone number on note paper at the scene. Some days later appellant was found in California and returned to Missouri by the Pike County Sheriff to whom she related her version of the crime. She admitted being present as a paid prostitute, claiming she was picked up by the decedent in a St. Louis bar, taken in his car to the summer cabin where they spent some time drinking. The decedent paid her $120, and after each was undressed, decedent without explanation struck her with a gun, which she grabbed, and in the ensuing struggle the gun discharged, the bullet striking Spahn. Spahn's

account of these events to Officer Bizelli were in complete variance with that of appellant. He told Bizelli the shooting involved an unprovoked assault in which a black female and two white males came uninvited to his house, threatened and attacked him. During the attack, he was shot but did not identify to Officer Bizelli who had fired the shot.

After the shooting appellant took Spahn's car and attempting to leave, drove into a ditch. She was assisted by several witnesses who later identified appellant, the car was pulled from the ditch and she proceeded to St. Louis, abandoning the car at the Welfare Office parking lot on De Baliviere Avenue.

Appellant's request for leave to call her mother as a witness was denied under authority of Rule 25.45, V.A.M.R.,[1] on the grounds that appellant's mother's name was not disclosed or listed in response to the State's motion for discovery under Rule 25.-34, V.A.M.R.[2]

Appellant first contends the court erred in permitting Officer Bizelli to testify to Mr. Spahn's account of events preceding the shooting, as such evidence was hearsay. The disputed testimony is as follows:

"I asked him what had happened, how he received the injury and he stated that early in the morning or—[defendant's objection, overruled] . . . He said either early morning which would have been Thursday, the 13th, I believe it was, or late on the evening of the 12th, some people came to his door, a black female and two white male subjects and asking for gasoline. They stated to him that apparently—[defendant again objects, overruled] . . . Anyway the people

---

1. Rule 25.45, V.A.M.R. "*Sanctions*

If at any time during the course of the proceeding it is brought to the attention of the court that a *party has failed to comply* with an applicable discovery rule . . . *the court may* . . . *exclude such evidence.*" (Emphasis supplied.)

2. Rule 25.34, V.A.M.R. "*Disclosure by Defendant to State Upon Court Order Without Exercise of Discretion by Court*

(A) Except as otherwise provided in these Rules as to protective orders, and subject to constitutional limitations, on written request by the state, *the defendant shall disclose* to counsel for the state such part or all of the following material or information within his possession or control designed in said request:

    ✻    ✻    ✻    ✻    ✻    ✻

(2) The *names* and last known *addresses of persons*, other than defendant, *who defendant intends to call* as witnesses at any hearing or *at the trial* . . ." (Emphasis supplied.)

stated that they had run out of gas and need gasoline. Mr. Spahn told me that he told these people to go and ahead and take as much gasoline as they need out of the tank which is near his residence on his property. He stated they left and were gone for a period of time, and then they returned. He stated to me that he thought they were going to pay him for the gasoline.

He said they came in and when he asked what they were doing or what they were going to do, he stated they didn't have any money and one of them hit me. He stated, 'we fought and I was shot.' "

Respondent asserts Bizelli's testimony was not hearsay since it was not offered for the truth of the matters asserted or in the alternative that its admission was not prejudicial. We find this contention without merit.

■ Following defense counsel's timely objections to Bizelli's recital of Spahn's statement, a conference was held out of the jury's hearing, (the content of which does not appear in the record) and appellant's objection to the hearsay was overruled. This evidence, though hearsay, was pertinent to the issues, constituting substantial proof of what happened on the night in question and there can be little doubt it was given some weight by the jury. We are unimpressed with respondent's argument, unsupported by the record, that Spahn's statement was not offered for the truth of the matters it contained. First we note no limiting or cautionary instructions were given and the claimed purpose for its offer, i. e. to let the officer relate the circumstances of his contact with the victim, does not alter its character as hearsay nor effect its admissibility. We do not know the grounds on which appellant's objection was overruled but the testimony was in evidence for whatever value the jury chose to give it. On this state of the record we must decide the issue, since an "appellate court must take the trial record as it finds it." *State v. Matthews*, 512 S.W.2d 248, 249[1] (Mo.App. 1974).

■ The evidence was hearsay thus inadmissible, unless it is found to be a dying declaration or other exception to the rule and none is suggested by respondent. Decedent's statement to the officer fails to qualify as a dying declaration, as that exception to the hearsay rule is described and delineated in *State v. Woodard*, 499 S.W.2d 553, 557[7, 8] (Mo.App.1973). There the court stated:

"To be admissible, a dying declaration must have been made by the declarant in extremis 'in the belief on the part of the declarant of impending death, after hope of recovery has been abandoned.' *State v. Custer*, 336 Mo. 514, 80 S.W.2d 176, 177 (Mo.1935). See also *State v. Davis*, 337 Mo. 411, 84 S.W.2d 930 (1935) and *State v. Proctor*, 269 S.W.2d 624 (Mo.1954). Belief of 'impending death' and abandonment of 'hope of recovery' both of which are conditions precedent to the admissibility of a dying declaration, are necessarily subjective, and, hence, fall into a category that is (1) difficult to prove, and (2) even more difficult to ascertain. There are, however, recognized methods of proving the declarant's state of mind as to the required subjective elements, the strongest, undoubtedly, being express statements by the declarant, but, additionally, by showing the nature and extent of the inflicted wounds, statements of attending physicians made to and acquiesced in by declarant, the length of time elapsing between the making of the declaration and death itself, the administration of 'last rites', and last, but by no means least, the conduct of declarant and any and all other circumstances that reveal his apprehension of impending death and abandonment of hope for recovery. *State v. Livingston*, 204 S.W. 262 (Mo. 1918) and *State v. Proctor*, supra. Summarized, unless declarant makes express statements disclosing his state of mind, both as to *belief of impending death and abandonment of hope of recovery*, objective facts must be shown from which declarant's state of mind, both as to belief of impending death and abandonment

of hope for recovery, may be reasonably inferred." (Emphasis supplied.)

■ In the case at bar no evidence justified a finding that Mr. Spahn had abandoned hope of recovery or believed his demise was imminent. He was conscious and lucid when discovered. Although his wound was serious at the time he made the statement, he had survived thirty hours and knew an ambulance was ordered for his removal to the hospital. Dr. Jackson, the examining physician at the Pike County Hospital testified that Mr. Spahn's pulse was strong, his blood pressure adequate, he showed no signs of extensive blood loss and there was no obvious injury to the lungs. It was more than six days before Mr. Spahn died; and pneumonia, a later complication not shown present when he made the statement to Officer Bizelli, was the immediate cause of death. Decedent was able to converse at length with the officer, and made no comment reflecting a foreboding sense of impending death or hopelessness. Under these circumstances, the statement was not a dying declaration and the denial of appellant's objection to the hearsay, error.

■ The State urges and we agree that not all trial errors require reversal; but as stated in *State v. Maxwell*, 502 S.W.2d 382, 393[14] (Mo.App.1973), error in admission of evidence should not be declared harmless unless it is so without question. The authority in Missouri is clear that extrajudicial statements of witnesses constitute a form of hearsay, *State v. Nimrod*, 484 S.W.2d 475, 479[3] (Mo.1972), and their admission in evidence will constitute reversible error unless as a matter of law it can be concluded such error was not a factor that might have been decisive in the jury's verdict. *State v. Degraffenreid*, 477 S.W.2d 57, 66 (Mo.banc 1972) (Finch, C. J., concurring). In some cases such statements may be used to impeach or contradict, *State v. Stamper*, 314 Mo. 635, 285 S.W. 437 (1926), or under proper circumstances are harmless error if mere corroboration of a fact not in issue, *State v. Maxwell, supra* at 394; but no such saving quality appears in the case before us. We deem admission of the state-

ment, containing substantial evidence of facts not otherwise proved, and material to the homicide charged, has not been shown to be harmless. We regard as untenable the State's argument that the offending statement "simply corroborated appellant's own testimony" rendering its admission harmless. In fact the statement was neither corroborative nor cumulative but in gross conflict with appellant's admissions to the Sheriff of Pike County and the appellant's testimony in chief; measured by *Degraffenreid, supra*, it can hardly be deemed harmless error. "The record does not demonstrate that the defendant was not injured by the error as by showing that the jury disregarded or could not have been influenced by the evidence." *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294, 300 (1944). *State v. Degraffenreid, supra* at 64[14]. For these reasons the judgment must be reversed and the cause remanded.

■ Appellant's conviction of manslaughter constituted an acquittal of the more serious degrees of homicide charged; and if retried, the jury may be instructed only on manslaughter. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Spidle v. State*, 446 S.W.2d 793[1] (Mo.1969). Thus the alleged grounds for appellant's next contention of error, i. e. giving the second degree murder instruction without sufficient evidence to support the submission, no longer remains and requires no further discussion. Finally, we see little likelihood that the situation giving rise to her third contention will reoccur; accordingly, we do not rule the point. Reversed and remanded.

WEIER, P. J., and McMILLIAN, J., concur.