STATE of Missouri,
Plaintiff–Respondent,

v.

Bruce MORRIS, Defendant–Appellant.

No. 54883.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 6, 1990.

Timothy A. Braun, Capital Conflicts Defender, St. Charles, Robert Wolfrum, Asst. Capital Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

The state charged defendant by information and alleged that defendant killed his wife on November 18, 1986 by striking her on the head with a blunt object. The information charged murder in the first degree. Section 565.020 RSMo 1986. The state qualified the jury to consider a death sentence. The jury found defendant not guilty of the charged offense, not guilty of murder second degree, guilty of voluntary manslaughter. Section 565.023 RSMo 1986. The court sentenced defendant in accord with the wishes of the jury to serve a term of imprisonment of fourteen years.

Morris appeals his conviction on the grounds that the court erred: (1) in prohibiting questions by defendant during voir dire on the subject of minimum sentences on possible lesser included offenses; and (2) in refusing to submit an offered instruction on the charge of involuntary manslaughter.

Defendant did not dispute the fact that he struck his wife on the head with a 2X4 board or that the blow caused massive injuries which contributed to cause death. Defendant's counsel informed the venire that defendant conceded "he did it, but the question, maybe, is: how did he do it and what level of homicide is it, from murder first degree, on down to involuntary manslaughter." Defendant furnished the police with oral, written and video statements which described his acts. Defendant testified and told the jury substantially the same story he previously told the police.

The evidence was sufficient to sustain a conviction of murder first degree. For some years defendant resided with his wife and teen-age daughter in St. Charles County, Missouri. Some months prior to the killing defendant was working near Jefferson City, Missouri. He met and engaged to marry another woman. The other woman testified that defendant once told her he was a widower with a teen-age daughter. He later revised this statement and told her his wife was seriously injured in an automobile accident from which she could not recover. The day after the killing occurred, he told her his wife had died. Defendant admitted he made these different statements to his girlfriend. He also admitted that after he told his girlfriend his wife had died, he told friends, neighbors, his wife's relatives and the police that his wife left home in the middle of the night and disappeared.

The following represents a summary of defendant's in-court testimony. On the evening of November 18, 1986 defendant was at home with his wife. For the purpose of constructing a Christmas present defendant brought a 2X4 board into the home. He intended to cut the board into a frame for a stained glass window. He placed the wood board against a doorframe in the hallway and went to bed. During a discussion with his wife he admitted having an affair. His wife got mad and jumped out of the bed. She then said "Well, I had one, too but it didn't mean anything to me, I just done it to hurt you, and she stormed out of the bedroom." He followed his wife down the hall, heard a noise, and found his wife toward the end of the hallway. She was bent over. Defendant stubbed his toe on the board and picked it up. As he approached his wife she turned around and laughed at him and said "she had had a real man and I was only half a man, and, I don't know, I—I guess I hit her. I don't

know, I don't actually remember doing it, but that's the only thing that could have happened."

After striking his wife, defendant grabbed a towel from the linen closet and tried to stop the bleeding. At that time she wasn't breathing and he could not get a pulse. Defendant believes she died while he was holding her. Because of the bleeding he got a trash bag and put it over her head. He took the body to the garage, and wrapped it in a bedsheet and some plastic. He buried her body under the basement floor approximately one week later. Defendant cleaned the 2X4 board before putting it in the garage. He later placed it back on a pile of wood. Thereafter, it may have been burnt in the fireplace. Defendant told the jury he neither planned nor intended to kill his wife but felt he deserved time in the penitentiary. Defendant explained he did not call for medical help and covered up the crime because he was afraid of losing his daughter.

Law enforcement authorities followed defendant's directions and recovered the body. A forensic pathologist performed an autopsy on December 5, 1986. She found a laceration of the scalp with an underlying fracture immediately above and backward from the left ear. The skull was massively fractured. There was extensive hemorrhaging. The underlying brain was damaged. There was "probably one blow struck to this area." In most cases, a head injury of this sort would certainly be fatal. The pathologist concluded that the head injury, described on the death certificate as "blunt craniocerebral trauma," caused Mrs. Morris' death.

Additional testimony by the pathologist indicated that the plastic bag placed over the victim's head may have been a contributing factor, *if* the person was still alive. There was no evidence from either defendant's statements or testimony that the plastic bag, used to contain bleeding, was secured in a manner which would have prevented breathing. The pathologist's testimony confirmed "no anatomical evidence of any strangulation" and that an expert would not pronounce death simply by lack of respiration. In conclusion, the doctor could absolutely rule out strangulation.

In his first point, defendant contends he is entitled to a new trial because the trial court erred in refusing to permit specific voir dire questions on the full range of punishment for lesser included offenses. Two general observations are in order. First, in view of the facts it is likely that the verdict can be explained only in terms of the formulation and execution of a very skillful trial strategy by defense counsel. The strategy consisted of admitting guilt and focusing the factual decision of the jury on the question of the degree of homicide.

Second, the trial court observed that defense counsel had thoroughly explored with the venire an ability to decide the disputed issue on the degree of homicide. The verdict strongly suggests and the record confirms this observation was accurate.

Defendant argues the trial court denied him a fair and impartial jury guaranteed by the Sixth Amendment of the United States Constitution, equal protection under the United States and State of Missouri Constitutions, due process under the Fourteenth Amendment, and a fully qualified jury venire under Missouri case law. Defendant contends the trial court specifically erred by refusing to allow defense counsel to ask the venire members "[w]hether or not they could follow specific instructions about lesser forms of homicide, including among others an instruction on voluntary manslaughter or involuntary homicide." Defendant also contends "the court refused to allow defense counsel from asking any questions on the range of punishment for the lesser included homicides of murder in the first degree." Defense counsel anticipated evidence to support alternative instructions on murder second degree, voluntary manslaughter and involuntary manslaughter.

■ For the following reasons we reject this claim of error. First, the precise question the trial court would not permit was, as follows:

Now, we're going to talk about the bottom; whether or not you could give the bottom, and my question to you is, If the evidence in your mind justified a verdict of involuntary manslaughter, provided you were instructed by the judge and you found the man guilty of involuntary manslaughter, how many of you could consider a one dollar fine or one day in jail for someone killing his wife.

The court sustained an objection to the specific reference of "how many could" do that. The court then told defense counsel "I think the question should be asked whether or not they had—they could consider a full range of punishment, from the minimum to the maximum and I'll permit the question to be asked in that regard." Subsequently, the court told defense counsel, "I told you, Tim, you can ask them whether they will consider the full range of punishment, including the minimum as well as the maximum."

Defense counsel wanted to ask specific questions about minimum sentences for each lesser included offense which *may* be submitted. He chose to do so in terms of asking "how many of you could consider." We find no error in the ruling because the court offered defense counsel an opportunity to inquire about minimum and maximum sentences, providing the question was put in a proper form. The ruling did not foreclose a general question such as whether a member of the venire could not consider minimum punishment.

■ Second, because the jury found defendant not guilty of murder in the second degree, denial of voir dire questions on the range of punishment for that crime could not be prejudicial. The jury found defendant guilty of voluntary manslaughter. That verdict would have foreclosed a consideration of punishment on a lesser charge of involuntary manslaughter. Accordingly, denial of questions to the venire panel on the crime of voluntary manslaughter does not support a claim of prejudicial error.

■ Third, there is nothing in the record to indicate defendant was prejudiced in any way by the length of his sentence. The determination of the jury to recommend a sentence of fourteen years on the class "B" felony of voluntary manslaughter is within the authorized range of punishment of five to fifteen years. After returning a guilty verdict on the charge of voluntary manslaughter the court conducted a further hearing on the matter of punishment. Thereafter, the jury retired, deliberated and returned the recommended sentence. Defendant argues the process of death qualification itself created a conviction-prone jury. This contention as a source of error has been rejected on prior occasions. *See, Lockhart v. McCree,* 476 U.S. 162, 165, 106 S.Ct. 1758, 1760–61, 90 L.Ed.2d 137 (1986); *State v. Nave,* 694 S.W.2d 729, 735–36 (Mo. banc 1985). Defendant then urges that a sentence of one year less than the maximum is a sign or indication that he was prejudiced because the court did not permit him to "balance" the maximum sentence question by the state with a minimum sentence question [five years] on voluntary manslaughter. This proposition is not self proving. The length of sentence did not prove any member of the venire, or the jury, could not consider the minimum sentence. He claims unfairness results from the unbridled discretion of the prosecution to name the charged crime and thereby have the opportunity to death qualify the jury. On the facts in the present case, including the verdicts and defendant's admission of guilt of homicide, we find no unfairness or prejudice attributable to the charge of murder first degree.

■ Finally, the record does not support a finding that the jury failed to follow the instructions of the court in determining the recommended punishment. The jury was instructed to consider a range of punishment as provided by law and the recommended punishment was not excessive under the facts.

We find no abuse of discretion in the rulings of the trial court on the question of range of punishment. Such rulings lie within the sound discretion of the trial court. This "discretion will be disturbed on appeal only when a manifest abuse thereof is disclosed." *State v. Norton,* 681 S.W.2d 497, 498 (Mo.App.1984). We find no mani-

fest abuse by the trial court. Furthermore, "the party asserting manifest abuse of discretion has the burden of demonstrating a real probability that he was thereby prejudiced." *Id.*, citing *State v. Mudgett*, 531 S.W.2d 275, 280 (Mo. banc 1975). Defendant has not demonstrated a real probability that he was prejudiced by the trial court's rulings on the question of range of punishment.

■ Before addressing defendant's second claim of error a postscript is appropriate. Allowing the state to death qualify a jury because of the unique character of that sentence is a different matter than a determination of range of punishment. Recognition of the state's right to death qualify a jury affords the state an opportunity to secure a jury which could consider that sentence under the facts and the law. Under our system of law the state is entitled to an opportunity to remove every venire person who could not consider the death penalty under any circumstances. A juror who could not for any reason consider a death sentence could not follow all the instructions of the court on the charge of murder first degree. It does not follow that when the state is authorized to inquire about the death sentence the defendant must be allowed to ask the venire specifically whether it could consider the least possible sentence of each conceivable lesser included homicide. Defendant contends, on constitutional grounds of equal protection and due process, that this must be the result in a death qualified jury trial. We do not accept this analysis and conclusion, providing the jury is selected after determining whether each member of the venire could follow the instructions of the court and consider the range of punishment on all crimes subsequently submitted. The issue of a juror's ability to consider a death sentence addresses one possible sentence, not a range of punishment.

Defendant's second point on appeal is that the court erred in refusing to submit an instruction on the crime of involuntary manslaughter. Section 565.024 RSMo 1986. Defendant offered the following instruction:

INSTRUCTION NO. ____

If you do not find the defendant guilty of voluntary manslaughter, you must consider whether he is guilty of involuntary manslaughter.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on November 18, 1986, in the County of St. Charles, State of Missouri, the defendant caused the death of Betsy Morris by hitting her on the head with a blunt object or by suffocation, and

Second, that defendant recklessly caused the death of Betsy Morris, then you will find the defendant guilty of involuntary manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of involuntary manslaughter.

In determining whether the defendant recklessly caused the death of Betsy Morris, you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

Defendant may be found guilty of involuntary manslaughter only if the jury could find he recklessly caused the death of his wife. Section 565.024.1(1) RSMo 1986. Defendant was entitled to an instruction for the lesser included offense only if the evidence supported a finding of involuntary manslaughter. *State v. Spencer*, 725 S.W.2d 54, 56 (Mo.App.1987).

■ We find defendant was not entitled to an involuntary manslaughter instruction. First, the proposed instruction would have submitted suffocation as a cause of death but there was no evidence to support a finding that the cause of death was suffocation. Accordingly, evidence that defendant placed a plastic bag over his wife's head because of the bleeding is not proof

the act was reckless. Use of the plastic bag was not proven to have caused death.

Second, the instruction would have submitted, in the alternative, that the blow to the head with a blunt object was reckless. There is no evidence to support submission of that issue. Defendant's theory was that he intentionally struck his wife but did not intend the result, that he acted in the heat of passion. These facts supported a submission of voluntary manslaughter, not involuntary manslaughter.

Third, the last paragraph of the instruction requires a finding that defendant *consciously* disregarded a substantial and unjustifiable risk of causing death. Defendant testified that he used the plastic bag after forming a belief that his wife was dead. Therefore, it is impossible to find defendant consciously disregarded any risk.

Defendant's motion to dismiss appeal, filed after submission, is denied. We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.