**STATE of Missouri, Respondent,**

v.

**Carlton L. MAYES, Appellant.**

**No. WD 46354.**

Missouri Court of Appeals,
Western District.

Decided Dec. 28, 1993.

Christine Stallings, Public Defender, Columbia, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

Carlton Mayes appeals from the trial court's order finding him guilty of burglary in the second degree, in violation of § 569.-170, RSMo 1986 and felony stealing, in violation of § 570.030, RSMo 1986. Mayes was sentenced as a persistent offender to consecutive sentences of ten years and seven years, respectively.

Judgment is affirmed in part and reversed in part.

On March 28, 1990, Clarice Hemphill, an employee at the J.C. Penney's store at Metro North Mall, observed defendant erratically "darting in and out" of the women's dress section of the store. She testified that the defendant seemed "very suspicious" and kept watching her. Ms. Hemphill saw defendant walk out of the store. A short time later, she saw defendant sitting at a "credit table" in front of the store in the mall area. He was holding a large, gray plastic Sears bag and looking back into the store. Next, Hemphill saw defendant in the corner of the store near the entrance where he appeared to be putting something into his bag, which was resting on the floor. Hemphill observed defendant leaving the store with his bag full.

On March 29, 1990, Hemphill again observed defendant in the store carrying a gray

bag. Defendant pushed the bag under a rack near the mall entrance to the store. Hemphill notified security that "he was back again." Defendant exited the store and stood by a mall directory structure near the entrance of the store. Defendant reentered the store and subtly attempted to retrieve the sack. Defendant's activities were being observed by Wrenfrey Ballance, the loss prevention manager for Penney's. As Mr. Ballance turned toward the defendant, the defendant abruptly abandoned the sack and took off toward the mall doors walking very quickly through the mall. Ballance reached defendant before he made it outside the doors and identified himself. Ballance asked defendant to accompany him back to the Penney's store. Defendant asked why he was being confronted. Ballance told defendant that it had to do with the sack. Defendant responded, "I didn't take it out of the store so I have not committed a crime." Ballance and defendant proceeded back to the store to discuss the sack.

The sack contained nine women's suits worth approximately $1,400.00. The suits ranged in size, including sizes 6, 8, 10, 12 and 14. Ms. Hemphill testified that the suits had been in a stockroom in Penney's, not on the sales floor. Hemphill testified that she saw the suits in the stockroom on March 26, 1990. All the suits contained tags indicating that they were to be held in the stockroom. Ms. Hemphill stated they were being held for a sale occurring around Easter, in April. Ms. Hemphill testified only employees were allowed in the stockroom and the door to the stockroom was kept closed.

Defendant Mayes was charged with two counts of burglary and two counts of stealing. The burglary charges were based upon the theory that Defendant Mayes had committed burglary when he had entered the stockroom of the store for the purpose of committing theft on both March 28 and March 29. No one, however, had seen defendant in the stockroom on either date.

At defendant's trial, defendant did not present any evidence. At the close of the evidence, the trial court granted defendant's motion for judgment of acquittal as to Count I, burglary in the second degree, and Count II, stealing over $150.00, for the crimes allegedly committed on March 28, 1990. The jury found defendant guilty on Count III, burglary in the second degree, and Count IV, stealing over $150.00, for the crimes allegedly committed on March 29, 1990. The trial judge entered judgment in accordance with the jury's findings. Defendant appeals from the trial court's judgment.

## Inventory Report

We first take up Point II, which challenges the admission of certain testimony concerning stockroom inventory reports. There was no testimony that anyone had seen the defendant in the stockroom, or entering or leaving the stockroom, on March 29. The evidence that defendant had entered the stockroom was based on the fact that, at the time of defendant's arrest, there were nine women's suits in the bag which defendant had been carrying. In order to establish that the suits had been removed from the stockroom by defendant, the State presented the testimony of Ms. Hemphill that the suits were being held in the stockroom for a particular sale to be advertised later. The State also presented the testimony of Mr. Ballance concerning an inventory of the contents of the stockroom. Mr. Ballance compared an inventory of stockroom after the arrest of defendant to a previous inventory report prepared prior to the incident. The prior inventory report had been prepared by another person. The trial court overruled defendant's hearsay objection concerning the inventory. Ballance testified that he determined from comparing the inventories that the nine suits found in defendant's bag were missing from the stockroom. There was no evidence as to the date the previous inventory was conducted—the testimony simply implied that the inventory was conducted prior to the 29th of March.

Defendant submits that the trial court erred in overruling his objection to Mr. Ballance's testimony concerning the inventories. Defendant claims such evidence called for hearsay in that the prior inventory was conducted by a person who did not testify and was not available for cross-examination. Defendant argues such testimony deprived him of his right to cross-examine the witnesses

against him in violation of the sixth and fourteenth amendments to the United States Constitution and Article I, § 18(a) of the Missouri Constitution.

■ Hearsay is defined as "in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant." *State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). Ballance's testimony about the discrepancy between the inventory he conducted and the inventory taken prior to this incident was based on hearsay. The inventory represented an out-of-court statement offered for the truth of the matter asserted, *i.e.,* that the items found in defendant's bag were in the stockroom on the date of the previous inventory. The employee who conducted the first inventory was not present to testify. Nor was testimony presented such as would have qualified the earlier inventory report as a "business record." *See* § 490.660, RSMo 1986. The trial court erred in admitting this testimony over defendant's hearsay objection.

■ The State argues that even if the hearsay evidence regarding the inventory was erroneously admitted, its admission constituted harmless error because abundant evidence was presented establishing defendant's guilt on the burglary conviction. Evidence admitted in error which would require reversal in a close case can be disregarded as harmless where the evidence of defendant's guilt is strong. *State v. McMillin,* 783 S.W.2d 82, 99 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Therefore, we examine the competent evidence to determine whether the evidence supporting defendant's guilt of burglary is strong. The evidence that defendant intended to commit *larceny* was strong, but the *burglary* charge is the one in question here. The question is as to the amount and strength of the evidence showing defendant *entered the stockroom* in his attempt to commit larceny. This inquiry accommodates simultaneous examination of defendant's first point on appeal, in which he claims that the evidence is not sufficient to sustain the burglary conviction.

### Sufficiency of the Evidence

■ Section 569.170 provides that a person commits the crime of burglary in the second degree when he "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Section 569.010(8) provides that a person "enters unlawfully or remains unlawfully":

in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.

In order to prove its case on the burglary charge, the state had the burden of proving that defendant knowingly entered the stockroom unlawfully for the purpose of committing the crime of stealing. The intent may be inferred from circumstantial evidence of defendant's actions. Also, the unauthorized entrance of the stockroom may be proved by circumstantial evidence. Clarice Hemphill testified that, on March 26, 1990, she had seen suits identical to the ones found in defendant's sack on the 29th. Hemphill further stated that, to her knowledge, the suits in the stockroom had not been put out onto the sales floor as of March 29, because they were being held in the stockroom for a sale scheduled to occur around Easter. The suits had tags on them indicating they were being held in the stockroom. Hemphill admitted on cross-examination that she could not say with certainty that the suits were not placed on the sales floor before March 29 by another store employee without her knowledge. While the testimony invites an inference that no sales person would have been likely to remove the suits from the stockroom and place them on the regular sales floor while the garments still bore the stockroom tags,

there was no testimony from anyone responsible for, or involved in, the establishment or maintenance of such policies. The door to the stockroom was kept closed, and the public was not permitted access to the stockroom. The evidence as to the inventory comparison, while erroneously admitted, nevertheless may be considered by this court as to the issue of whether the evidence is sufficient to support the conviction. *State v. Wood*, 596 S.W.2d 394, 398–399 (Mo. banc 1980). Reversal for trial error, as distinguished from evidence insufficiency, does not constitute a decision that the State has failed to prove its case. *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978). Our review of the evidence satisfies us that, with or without the inventory evidence,[1] there was sufficient evidence to support the conviction under the standards of *State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989) and *State v. Grim*, 854 S.W.2d 403 (Mo. banc 1993).

On review, the court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary.... [A]ppellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.

*Grim*, 854 S.W.2d at 405 (quoting *Dulany*, 781 S.W.2d at 55).

Even though no one saw the defendant in the stockroom, the evidence, seen in the light most favorable to the verdict, was sufficient for a reasonable juror to draw the necessary inference that defendant entered the stockroom for the purpose of stealing. A reasonable jury could find defendant guilty beyond a reasonable doubt of the crime of burglary.

### Prejudicial vs. Harmless

▮ Having determined that the evidence is sufficient to support the conviction, we now must determine whether the trial court error in the admission of the hearsay evidence of the inventory comparisons was prejudicial. Harmless error is not a ground for reversal. *State v. Spica*, 389 S.W.2d 35, 53 (Mo.1965), *cert. denied*, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966). However, error in the admission of evidence should not be declared harmless unless it is so beyond a reasonable doubt. *State v. Miller*, 650 S.W.2d 619, 621 (Mo. banc 1983). If the properly admitted evidence that defendant entered the stockroom on the 29th of March is so strong and so convincing as to leave this court persuaded beyond a reasonable doubt that the defendant would have been convicted of burglary without the inadmissible evidence, then we may affirm the conviction. On the other hand, if it appears that the inadmissible evidence may have played a role in the guilty verdict, then our duty is to reverse and order a new trial. *Id.*

▮ The effect of the inventory evidence is uncertain. The exhibits showing the inventories were not admitted into evidence. There was no testimony as to the date of the earlier inventory. If the earlier inventory were conducted on the morning of the 29th, the day defendant was arrested, it would have been of much more evidentiary value than if it were conducted on the 25th (in which case it would have been cumulative to Ms. Hemphill's testimony). Since there is no evidence as to when it was conducted, it is difficult to evaluate its impact upon the jury. Rationally, this testimony proved nothing other than that, on some date prior to the 29th, the garments were in the stockroom. However, the effect of the evidence may not have been limited to that which is rational. Neither attorney explained or referred to the inventory evidence in closing argument. The difficulty is that, since no one explained the effect of this evidence to the jury, and there were no exhibits in evidence from which dates could be determined, the jurors may have believed that the date of the first inventory must have been close to the 29th. In this case, in which no one saw the defendant in the stockroom, we cannot say we are satisfied beyond a reasonable doubt that the verdict would have been the same if the inventory evidence had not been admitted.

---

1. As discussed elsewhere in this opinion, the inventory evidence was of limited relevance because there was no testimony as to the date the first inventory was conducted.

Consequently, we hold that the admission of the inadmissible hearsay testimony resulted in prejudicial error. The trial court's judgment is reversed and remanded for a new trial on the burglary conviction.[2] Point II is granted. Point I (sufficiency of evidence to support the conviction) is denied.

### Uncharged Misconduct Evidence

██ Wrenfrey Ballance testified at trial concerning an earlier incident, approximately two weeks prior to defendant's arrest, in which he observed defendant walk in a J.C. Penney's stockroom. Ballance saw defendant "roll up" two pairs of slacks, enter the stockroom, emerge several seconds later, throw the slacks down on the floor and exit the store. Defendant alleges that the trial court erred in admitting evidence of the prior incident because the testimony constituted inadmissible evidence of prior crimes in violation of the fourteenth amendment to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. In view of our action in reversing the burglary conviction and ordering a new trial, this issue need not be decided presently. Also, defendant has not properly preserved this point of error for review because he did not include it in his motion for new trial. *See State v. Root*, 820 S.W.2d 682, 687 (Mo.App. 1991). However, because the issue is likely to recur on a new trial, we shall discuss the issue briefly for purposes of providing guidance with regard to a re-trial. At the outset, we note that defendant's actions on the earlier date do not necessarily constitute uncharged misconduct. It is not entirely clear what the actions do show, or what relevance they may have.

██ Evidence of prior misconduct is inadmissible for the purpose of showing a propensity to commit such misconduct. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). It will be admissible if logically relevant (in that it has a legitimate tendency to prove the accused's guilt) and if it is legally relevant (in that its probative value outweighs its prejudicial effect). *Id.* Generally, such evidence has a legitimate tendency to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan; (5) identity of the person committing the crime; or (6) in sexual assault cases, that the perpetrator's actions were so distinctive as a signature of his *modus operandi* that the prior actions corroborate the victim's testimony. *Id.*

Beyond these identified "exceptions" to the rule against evidence of prior misconduct, there remains the overall principle that evidence of uncharged misconduct, although not admissible to show a propensity to commit criminal acts, is admissible if the evidence is logically relevant (in that it has a *legitimate* tendency to establish guilt), and if the probative value of the evidence outweighs its prejudicial effect. *Id.* at 13. In this case, if the stockroom which defendant entered a couple of weeks before the 29th were the same stockroom as he allegedly entered on the 29th, the evidence may be logically relevant to show defendant's knowledge and familiarity with the stockroom (to show that he did not accidentally and innocently stumble into the stockroom). Thus, such evidence would go to his intent at the time. However, defendant here asserts that the stockroom allegedly entered on the 29th is not the same as the stockroom allegedly entered earlier. If the state intends to use this evidence, the state will have the burden of establishing the relevance by some showing that the stockrooms were sufficiently similar, or that the circumstances were such, as to show that the earlier incident contributed to defendant's knowledge and familiarity with the stockroom allegedly entered on the 29th. If defendant requests a limiting instruction, one should be given in order to avoid allowing the jury to infer that the fact that he entered the stockroom on one occasion shows a predisposition to enter stockrooms for the purpose of stealing. If, in the trial judge's discretion, the state fails to sufficiently tie in the relevance of the earlier incident, the court should refuse the evidence on the basis that the risk of

---

2. The erroneous admission of the hearsay evidence does not affect the stealing conviction because the jury did not have to find that defendant entered the stockroom to convict him on the stealing charge. Defendant did not challenge the evidence supporting the stealing conviction.

prejudice outweighs the value of the evidence in proving a fact at issue.

The evidence of defendant's activities on the 28th of March (as to which the defendant has been acquitted) is also evidence of uncharged misconduct. Because defendant is no longer charged with committing offenses on the 28th, there will be an issue as to the admissibility of Ms. Hemphill's testimony as to defendant's actions in apparently stealing from the store on the 28th. Defendant's actions on the 28th may be logically relevant to proof of his intent to steal on the 29th. Again, the trial court must determine whether the evidence is not only logically relevant but also legally relevant, that is, whether the probative value outweighs the risk of prejudice, taking into account all the circumstances of the case.

### Reasonable Doubt Instruction

Another issue which will occur on retrial is the defendant's assertion that the reasonable doubt instruction contained in MAI–CR3d 302.04 is defective in that it denies to defendant his right to due process of law. It is hardly necessary to comment on this issue in view of the extensive litigation on this issue in recent years. *See State v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991).

### Conclusion

The judgment of conviction and the sentence are affirmed as to the charge of felony stealing (Count IV). The judgment of conviction and the sentence as to the charge of burglary (Count III) are reversed. The case is remanded to the trial court for a new trial on the burglary charge.

All concur.