**STATE of Missouri, Plaintiff–Respondent,**

v.

**Olian Paul ISOM, Defendant–Appellant.**

**Olian Paul ISOM, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 19130, 19823.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 21, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied Sept. 8, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Rosalynn Koch, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Presiding Judge.

Olian Paul Isom (Defendant) was charged with second degree murder and armed criminal action. A jury found him guilty of involuntary manslaughter and he was sentenced to five years' imprisonment. He appeals that conviction in Case No. 19130. He also appeals the denial, after an evidentiary hearing, of his motion for postconviction relief pursuant to Rule 29.15 in Case No. 19823. Because we hold that Defendant is entitled to relief on his direct appeal, the issue raised in Case No. 19823 is moot and that case is therefore dismissed.

Defendant's conviction arose from the shooting death of Ernest Hollowood (victim) on January 7, 1992. The evidence was undisputed that Defendant shot the victim with a .32 caliber pistol at Defendant's business, known as "Paul's Place," where the victim and his cousin were shooting pool.

According to some witnesses, the victim and Defendant had a disagreement which resulted in Defendant or another patron tell-

ing him to leave the establishment. As the victim was leaving, the Defendant struck him in the back of the head with his revolver, knocking him out the door. When the victim turned and opened the door, the Defendant fired one shot which went through his hand and entered his chest and heart.

Defendant testified that the victim followed him around the establishment calling him names after he told the victim and some of his friends to get out of the bathroom where they were preparing to use crack cocaine. Defendant also testified that on one occasion he saw the butt of a gun[1] in the victim's pocket, which caused him to retrieve his own pistol from behind the counter and place it in his pocket. According to his testimony, he later opened the front door, hoping that the victim would leave, but as he turned around he noticed that the victim had his hand in the same pocket where he had earlier seen the gun. The Defendant grabbed the victim's hand and shook his pistol by the victim's head, telling him that "if you go in your pocket I'm going to have to kill you."[2] He later testified that he told the victim that if he went to his pocket he would "shoot" him. The victim then took his hand out of his pocket and struck Defendant in the chest as he went out the door. Defendant testified that he slammed the door and as he turned to walk back toward the counter, the victim kicked the door in and again had his hand in the same pocket in which Defendant had earlier seen the gun. Defendant admitted that he then fired the single shot that killed the victim. He testified he was then five or six feet from the victim and "[w]hen the people were running I fired [sic] I was intending to break his arm, but they were running stampede [sic] made me have to move the pistol and hit him up there, I didn't mean to kill him."

Defendant contends that the trial court erred in submitting, over his objection, an instruction on involuntary manslaughter because it was not supported by the evidence. Rather, he argues that under the evidence, he was either guilty of second degree murder, or he was entitled to an acquittal based on self-defense. Both of those issues were submitted to the jury but it failed to return a verdict based on either.

■ In determining whether there was evidence to support the conviction for involuntary manslaughter, we accept as true all evidence and permissible inferences which support the verdict, reject all contrary evidence and inferences, and determine whether the evidence, so viewed, is sufficient for twelve reasonable people to find the defendant guilty beyond a reasonable doubt. *State v. Harris*, 825 S.W.2d 644, 645 (Mo. App.E.D.1992).

■ Section 565.024.1(1)[3] provides that a person commits the offense of involuntary manslaughter if he "[r]ecklessly causes the death of another person." The term "recklessly" is defined in MAI–CR 3d 313.10 and was included in the verdict-directing instruction submitting involuntary manslaughter in the instant case. It reads:

In determining whether the defendant recklessly caused the death of [name of victim], you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.[4]

"Recklessness" involves conscious risk creation and resembles knowingly in that a state of awareness is involved, but the awareness is of risk, that is of a probability less than a substantial certainty. *State v. Smith*, 891 S.W.2d 461, 467 (Mo.App.W.D.1994).

---

1. There was no evidence that a gun was found on the person of the victim after the shooting.

2. Defendant testified that to "go in your pocket" meant that the victim was going to try to shoot him.

3. All references to statutes are to RSMo 1994.

4. Section 562.016.4 also defines "reckless" in similar terms.

Involuntary manslaughter is a lesser included offense of second degree murder. § 565.025.2(2)(b). Trial courts were previously required to "instruct down" or automatically submit manslaughter in murder prosecutions. *But see State v. Anding*, 752 S.W.2d 59, 61 (Mo. banc 1988). That rule was abolished by § 556.046.2 under which the trial court is obligated to instruct on manslaughter as a lesser included offense only if there is an evidentiary basis for the defendant to be acquitted of the charge and convicted of the lesser included offense. *See State v. Anding*, 752 S.W.2d at 62; *State v. Leisure*, 838 S.W.2d 49, 57–58 (Mo.App.E.D. 1992); *State v. Harris*, 825 S.W.2d at 648; *State v. Reynolds*, 782 S.W.2d 793, 797 (Mo. App.S.D.1989); *State v. Hamlett*, 756 S.W.2d 197, 199 (Mo.App.S.D.1988); *State v. Merritt*, 734 S.W.2d 926, 932 (Mo.App.E.D.1987).

■ Therefore, a trial court may not submit manslaughter to the jury, as a lesser included offense of murder, unless there is an evidentiary basis for convicting the defendant of that charge. *State v. Anding*, 752 S.W.2d at 62; *State v. Miller*, 772 S.W.2d 782, 783 (Mo.App.S.D.1989). In particular, there must be sufficient evidence to support a finding that the defendant recklessly caused the death. *State v. Morris*, 784 S.W.2d 815, 819 (Mo.App.E.D.1990); *State v. Green*, 778 S.W.2d 326, 327 (Mo.App.E.D.1989).

■ In determining whether there is a submissible case of involuntary manslaughter, the court reviews the record to determine whether there was evidence of recklessness as opposed to intentional conduct. *See State v. Smith*, 891 S.W.2d at 467. In the instant case, Defendant argues that under the evidence there was no basis for a finding of recklessness "since appellant [Defendant] acknowledged that it was intentional." He concedes that there was sufficient evidence to support the submission of second degree murder but not of involuntary manslaughter.

■ Defendant relied primarily on self-defense in defending the instant case. His contention that he shot the victim in self-defense, however, does not support an involuntary manslaughter instruction. The concept of self-defense implies an act which is intentional rather than reckless or accidental. *See State v. Salem*, 780 S.W.2d 683, 685 (Mo.App.S.D.1989); *State v. Hafeli*, 715 S.W.2d 524, 529 (Mo.App.E.D.1986).

■ In arguing that the evidence in the instant case was insufficient to support the involuntary manslaughter instruction, Defendant acknowledges his testimony that he did not intend to kill the victim. Testimony that a defendant did not intend to kill the victim is not determinative, however, of whether an involuntary manslaughter instruction is authorized. *State v. Arbuckle*, 816 S.W.2d 932, 937 (Mo.App.S.D.1991). Rather, that testimony must be measured against the facts. *Id.* A testimonial denial of an intent to kill may not authorize an instruction on manslaughter where a defendant's conduct was likely to produce death. *Id.; State v. Green*, 778 S.W.2d at 328.

■ In the instant case, while Defendant testified that he did not intend to kill the victim, his testimony indicated that he did intend to shoot him in the upper portion of the body. This testimony, together with Defendant's testimony that he told the victim "if you go in your pocket I'm going to have you [sic] kill you," and "if you go in your pocket I will shoot," indicates that the shooting was intentional, not accidental. Evidence that a defendant intended the act which caused the death, even if he did not intend the result, supports submission of voluntary, not involuntary, manslaughter. *State v. Morris*, 784 S.W.2d at 820.

■ Defendant's actions in the instant case went beyond recklessness and constituted conduct which was likely to produce death. As indicated earlier, Defendant's theory that he shot in self-defense indicates a voluntary, intentional act. There was no evidence of recklessness or an unintentional or accidental shooting. Conduct which is not involuntary and transcends mere recklessness will not support an instruction on invol-

untary manslaughter. *State v. Tate,* 733 S.W.2d 45, 49 (Mo.App.S.D.1987). A person is presumed to have intended that death follow acts which are likely to produce that result. *State v. Green,* 778 S.W.2d at 328; *State v. Hamlett,* 756 S.W.2d at 201. We are constrained to conclude, therefore, that the evidence did not support an instruction on involuntary manslaughter.

In fact, the State does not argue that the evidence supported a finding of recklessness and, therefore, a submission of involuntary manslaughter. Rather, it contends that, even assuming there was no evidence to support an instruction on manslaughter, Defendant may not complain because of § 545.030, which provides, in part:

> 1. No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected:
>
> . . . .
>
> (17) Because the evidence shows or tends to show him to be guilty of a higher degree of the offense than that of which he is convicted;

The State concludes that because of the statute, Defendant's argument that, based on the evidence, he was either guilty of second degree murder or nothing at all is of no avail. In support, it cites *State v. Jewell,* 473 S.W.2d 734, 739 (Mo.1971); *State v. McQuerry,* 406 S.W.2d 624, 627 (Mo.1966); *State v. Nibarger,* 391 S.W.2d 846, 848–49 (Mo.1965); *State v. Chamineak,* 343 S.W.2d 153, 157 (Mo.1961); *State v. Garrett,* 282 S.W.2d 441, 442–43 (Mo.1955); *State v. Brotherton,* 266 S.W.2d 712, 717 (Mo.1954); *State v. Murphy,* 341 Mo. 1229, 111 S.W.2d 132, 137 (1937); and *State v. Morrow,* 188 S.W. 75, 76 (Mo. 1916). The Missouri Supreme Court, in the above cases, held that, based on § 545.030 or its predecessor, when a submissible case is made as to murder, the defendant is not entitled to complain that a submissible case was not made as to a lesser degree of homicide for which the defendant was convicted. Those cases, however, were decided before *State v. Anding,* 752 S.W.2d at 59.

In *Anding,* the defendant was acquitted of first and second degree murder but was convicted of manslaughter. He complained that there was no evidence to support the manslaughter submission. The Missouri Supreme Court held that the "automatic submission" rule had been abolished, and under § 556.046.2 the court is to instruct on manslaughter as a lesser included offense only if there is an evidentiary basis for convicting the defendant of that charge. *Id.* at 62. The court concluded that the evidence showed that the defendant was either guilty of deliberate, premeditated murder or of nothing at all and reversed the defendant's conviction because the record did not contain evidence which would support a manslaughter conviction. *Id.*

It is apparent from the concurring opinion by Judge Blackmar in *Anding* that the court was aware of and considered § 545.030. *Id.* (Blackmar, J., concurring in result.) Judge Blackmar agreed that the conviction should be reversed, but he did so on the basis of what he considered to be a defect in the manslaughter instruction. He expressed, however, his previously held belief "that a prosecutor had the discretion to charge a lesser offense, even though the evidence supported a greater charge, and conviction of the lesser might be irrational." *Id.* at 63. In doing so, he noted the existence of § 545.030.1(17) and the fact that it was still in effect. *Id.* n. 2. He also referred to *State v. McQuerry,* 406 S.W.2d at 629, cited by the State in the instant case, which rejected the defendant's argument that a manslaughter instruction was erroneous because the evidence showed that he was either guilty of second degree murder or was innocent. *Id.* These arguments, which are consistent with those made by the State in the instant case, were obviously rejected by the majority in *Anding.*

The State also cites *State v. Gaston,* 897 S.W.2d 136 (Mo.App.W.D.1995), and *State v. Nodine,* 810 S.W.2d 114 (Mo.App.S.D.1991). In each case, the defendant had been convicted of voluntary manslaughter and unsuccessfully argued on appeal that the conviction

should be reversed for insufficiency of evidence to support it. Both of those cases were decided after *Anding,* but significantly in each case, the defendant had requested the manslaughter instruction. That distinguishes those cases from the one at bar.

 We are constitutionally bound to follow the controlling decisions of the Missouri Supreme Court. Mo. CONST. Art. 5, § 2 (1945); *State v. Rodgers,* 899 S.W.2d 909, 912 (Mo.App.S.D.1995). Under the authorities cited herein, there was insufficient evidence of recklessness to support the submission of involuntary manslaughter. Accordingly, based on *Anding,* we have no alternative but to reverse the conviction. By finding Defendant innocent of second degree murder, the jury necessarily found that he did not intentionally shoot the victim. *State v. O'Neill,* 825 S.W.2d 376, 378 (Mo.App.S.D.1992). We are, therefore, constrained to reverse the conviction and order Defendant discharged.

PREWITT, J., concurs.

CROW, J., files separate opinion concurring in part and dissenting in part.

CROW, Judge, concurring in part and dissenting in part.

I agree with the majority opinion's reversal of the conviction, but I respectfully disagree with the conclusion that Defendant must be discharged. I would permit the prosecutor to decide whether to re-try Defendant for voluntary manslaughter.

Under § 565.025.2(2)(a), RSMo 1986, voluntary manslaughter as defined in § 565.023.1(1), RSMo 1986, is a lesser degree offense of murder in the second degree.

A person commits voluntary manslaughter under § 565.023.1(1) if he causes the death of another person under circumstances that would constitute murder in the second degree under § 565.021.1(1), RSMo 1986, except that he "caused the death under the influence of sudden passion arising from adequate cause." I believe the evidence regarding the confrontation between Defendant and the victim at the door is sufficient to support a finding that Defendant shot the victim under the influence of sudden passion arising from adequate cause. *See: State v. Fears,* 803 S.W.2d 605 (Mo. banc 1991).

I am mindful that the verdict of guilty of involuntary manslaughter constituted an acquittal of murder in the second degree, the crime with which Defendant was charged. *State v. Favell,* 536 S.W.2d 47, 51[7] (Mo. App.1976). Obviously, Defendant cannot be tried anew for murder in the second degree. However, the jury had no occasion to consider whether Defendant was guilty of voluntary manslaughter because no verdict-directing instruction was given hypothesizing that offense.

Defendant's conviction is being reversed because of instructional error by the trial court, i.e., the trial court gave a verdict-directing instruction on involuntary manslaughter, which the evidence did not support, when the trial court should have given a verdict-directing instruction on voluntary manslaughter, which the evidence did support. The majority opinion correctly states: "Evidence that a defendant intended the act which caused the death, even if he did not intend the result, supports submission of voluntary, not involuntary, manslaughter."

Reversal for trial error, as distinguished from evidence insufficiency, does not constitute a decision that the State has failed to prove its case. *State v. Mayes,* 868 S.W.2d 541, 545 (Mo.App.W.D.1993). I find no authority demonstrating there is any constitutional impediment to trying Defendant for voluntary manslaughter. Therefore, I would give the prosecutor that option.