**STATE of Missouri, Respondent,**

v.

**Earl ROMESBURG, Appellant.**

**No. WD 36630.**

Missouri Court of Appeals,
Western District.

Dec. 31, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 28, 1986.

Robert Beaird, Kansas City, Quinn, Peebles, Beaird & Cardarella, of counsel, for appellant.

William L. Webster, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before MANFORD, P.J., and PRITCHARD and LOWENSTEIN, JJ.

PRITCHARD, Judge.

By the verdict of a jury, appellant was found guilty of second degree murder in the shooting death, which occurred on October 21, 1984, of Ollie Cooper, the mayor of Weaubleau, Missouri. The jury assessed punishment at 15 years imprisonment, and accordingly, the trial court entered sentence in the Division of Corrections for that term less 199 days time spent in jail.

The sufficiency of the evidence to sustain the conviction is not questioned.

Prior to the trial, appellant disclosed to the state that a number of witnesses would testify that one James Leslie had said that he was the one who killed Ollie Cooper. Attached to the disclosure, by way of an offer of proof, was the expected testimony of eight witnesses: Jackie Kennan heard Leslie tell someone, about March 1, 1984, in the Rustic Inn in Weaubleau that he had killed Ollie Cooper; about two nights after Cooper's murder, he heard Leslie say while sitting in the Rustic Inn that he had shot Cooper and had been paid $2,000 to do it; Leslie came to Ora Nadine Richards' home two months after Cooper's death and told her that he had killed Cooper, and that he had borrowed appellant's gun and killed Cooper's cows; Willie Richards heard the conversation in which Ora Nadine was told by Leslie that he had killed Cooper, and that he had been paid $50 apiece for them; Richard Cauthon, who lived with Ora Nadine, heard Leslie tell William Richards that he had killed Cooper; Nita Williams was in the Rustic Inn sometime between February 1 and March 3, when Leslie told her he had killed Cooper, but that he did not have any worries because he had a terrific alibi; Nita's husband, Larry, heard Leslie's statements that he had shot Cooper, and that he said his alibi was good enough; Kimberly Gillis, Leslie's ex-wife, had a conversation with him on St. Patrick's day weekend in 1984, in which he told her he had shot Cooper's horses. In re-

sponse to the disclosure, the state filed a motion in limine to preclude the defense witnesses' testimony that they had heard another or others admit committing the murder upon the ground that third party declarations are not admissible exceptions to the hearsay rule in criminal proceedings, citing *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981); and *State v. Gullett*, 633 S.W.2d 454 (Mo.App.1982). At trial, these witnesses, along with Harold Ray Champlin, testified by way of further offer of proof substantially to the same matters in the attachment to disclosure. At the close of trial testimony offer of proof, the court remarked that Leslie had been available in the courthouse for at least that day as somebody said in evidence, and the prosecutor informed the court that Leslie was available the day before and the same day as the offer was made. The court rejected the offer of proof.

Leslie had testified for the state at the preliminary hearing, and had provided one of the affidavits that allowed the sheriff to search appellant's residence for a 30/30 rifle which was seized, and which Leslie identified as the murder weapon, which was admitted into evidence upon expert testimony that it was the gun which had killed Cooper. The state declined to call Leslie as a witness at the trial. Neither did appellant attempt to call Leslie as a witness (even adverse) for the defense.

Appellant principally relies upon *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In that case, a third person "declarant" had made oral confessions to three different friends, and had made a written confession, later repudiated, that he had committed the murder with which petitioner was charged. The trial court granted a motion requiring the declarant to appear. The state failed to put him on the stand, and petitioner called him and laid a predicate for the introduction of his out-of-court confession, had it admitted into evidence and read to the jury. On cross-examination, the state elicited the repudiation of the confession. Petitioner requested that he be allowed to examine the declarant as an adverse witness, which

was denied by the trial court on the ground that he was not adverse, and the trial court refused to allow the testimony of witnesses as to the oral confessions, which was affirmed by the Mississippi Supreme Court upon the ground of hearsay, which court also held that the declarant's testimony was not adverse because he nowhere pointed the finger at petitioner. The United States Supreme Court reversed, saying that the "voucher" rule (of credibility of witnesses called by a party) applied by Mississippi interfered with petitioner's right to defend against the state's charges, and that the exclusion of the offered evidence of declarant's oral confessions, the reliability which was established, was also error, petitioner on both grounds being deprived of a fair trial. It should be noted that declarant (as here) was available at trial. The Chambers rationale was adopted in *State v. Turner*, 623 S.W.2d 4, 9 (Mo. banc 1981), which held that when an *unavailable* witness makes a declaration against penal interest, " 'where substantial indicia of reliability appear and declarant's complicity if true would exonerate the accused, declarant's averments against an interest penal in nature may not be excluded * * *.' " See also *State v. Carroll*, 629 S.W.2d 483 (Mo.App.1981), where the declarant was unavailable without question.

■ In this case, the trial court had information that Leslie was available in the courthouse for two days before the offer of proof was made, and apparently rejected his declarations against penal interest upon that ground. Apparently appellant did not seek to subpoena Leslie or his witness and to cross-examine him as an adverse witness as was attempted in the Chambers case. Thus, there is no way of knowing what Leslie might have said on the stand or whether he would have testified. In *State v. Brooks*, 693 S.W.2d 211, 212 (Mo.App. 1985), it was said, "Cases have focused on two basic requirements before such hearsay is admissible: 1) the declarant is unavailable, and 2) there is a 'substantial indicia of reliability.' [citing *State v. Turner*, 623 S.W.2d at 9.]" Both prongs of this test

must be satisfied for the declaration to be allowed. The Brooks court held that there was not a good faith attempt to locate the declarant, therefore the trial court did not err in refusing to admit the declaration. For that same reason, the trial court did not err in rejecting the offer of proof of the testimony as to the eight declarations against penal interest and Point I, raising the issue, is overruled.

In Point II, appellant contends that the trial court erred in refusing his offered alibi instruction, MAI–CR 2d 3.20. The record shows that the state requested appellant to disclose whether he intended to rely on the defense of alibi, but the state neglected to disclose in its request the place, date, and time of the crime charged. The information charged that the shooting death occurred in Hickory County, Missouri, on or about February 21, 1984. Appellant did not respond to the state's request for the disclosure of an alibi defense by announcing such intent and giving specific information as to the place at which he claimed to have been at the time of the alleged offense, and as particularly as known, the names and addresses of the witnesses by whom he intended to establish such alibi, in accordance with Rule 25.-05(A)(5).

Appellant states in his brief that he was under the impression that the time of the victim's death was 12:00 noon on February 21, 1984. How that impression arose is not disclosed, but the sheriff did testify that he got information from people who heard gunshots at about 12:00. The coroner testified that he saw the body at about 5:30 p.m. on that day, and then estimated the time of death at about 12:30, plus or minus about four hours. If minus, the time of death would have been around 8:30 a.m.

Appellant took the stand and testified that on the morning of February 21, he went downtown, perhaps to the post office and then to Nita's coffee shop to loaf. Then he went to the Tasty-freeze after it opened at 10:00, where he helped to get his car out of the driveway, then going in and having a conversation with some people

about real estate. He left Tasty-freeze and headed for home, stopping at Woodrow Teague's to borrow a wood bit, and that afternoon he nailed down tin roofs on a shed and two hog houses, and then put a three point hitch on his tractor. Woodrow Teague testified that he left Nita's Cafe at about 9:00 a.m., and appellant left at the same time, and came by his house between 10:30 a.m. and 11:30 a.m. to borrow a wood drill. Thomas B. Freeman, the owner of a drive-in testified that he felt that appellant was in his place of business at about 10:45 a.m. on the morning in question.

■ Although the court is required to give an alibi instruction if requested and if the evidence supports it, *State v. Cox,* 508 S.W.2d 716, 724 (Mo.App.1974); *State v. Franklin,* 591 S.W.2d 12, 14[1–3] (Mo.App. 1979), in the posture of this case that rule is inapplicable. Appellant here did not comply with the state's request for disclosure of that defense. While Rule 25.16 does not specifically list refusal of an alibi instruction as a sanction for nondisclosure, it does say that in addition to the granting of a continuance, or the exclusion of evidence, the court may "enter such other orders as it deems just under the circumstances." By reason of the nondisclosure, it would seem that the refusal of the alibi instruction was within the trial court's discretion. But be that as it may, by his own testimony and that of his two witnesses, appellant laid before the jury evidence of his lack of presence at the scene of the crime within the time frame that the state's evidence tended to show that the death occurred. Besides, appellant's counsel argued to the jury his nonpresence at the scene of the crime. By the evidence the issue was in the case for the jury's consideration, and the alibi instruction would have added nothing more. Thus, no fundamental unfairness resulted to appellant by the refusal of the alibi instruction which would have brought about a different result. In this case, furthermore, the jury was instructed that the state had the burden of proving that appellant shot Ollie Cooper. Therefore, the jury had to deter-

mine that appellant was present at the time and place of the shooting. Point II is overruled.

By Point III, appellant claims that the trial court erred in refusing his requested instruction on manslaughter. There is considerable question as to whether the contention is preserved for review inasmuch as the evidence supporting the instruction is not set forth in the motion for new trial, and the instruction is not set forth in appellant's brief. The matter, however, will be considered as to whether the refusal amounted to plain error under Rule 29.12(b). It does not. The automatic submission rule contained in MAI–CR 2d 15.00 series, and set forth in *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975), was repealed by § 565.025(3), RSMo (Cum. Supp.1983). See *Love v. State,* 670 S.W.2d 499, 502, n. 5 (Mo. banc 1984). The effective date of § 565.025(3) was October 1, 1984, so it applies to this case which was tried in November, 1984. Section 565.-025(3) provides that no instruction shall be submitted on a lesser included offense. Section 565.025(1) states that with certain exceptions, § 556.046 shall be used for the purpose of consideration of lesser offenses by the trier in all homicide cases. Subd. 2 of § 556.046 provides, "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Manslaughter is the intentional killing of a human being in the heat of passion, on reasonable provocation, without malice and premeditation. *State v. Sturdivan,* 497 S.W.2d 139, 142[8] (Mo.1973). None of these elements are shown by the evidence, and therefore the trial court was not required to submit a manslaughter instruction. Point III is overruled.

The judgment is affirmed.

All concur.