**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Cassie Lee TATE, Defendant-Appellant.**

No. 14904.

Missouri Court of Appeals,
Southern District,
Division Two.

July 8, 1987.

Melinda K. Pendergraph, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant Cassie Tate guilty of murder in the second degree, § 565.021.1(1),[1] and he was sentenced to life imprisonment. Defendant appeals.

Defendant's "points relied on" are, in general, that the trial court erred in excluding evidence of defendant's voluntary intoxication at the time of the offense, in failing to instruct on voluntary manslaughter and involuntary manslaughter, and in giving Instruction 6, MAI–CR 2d 13.04, the conventional instruction on murder in the second degree. None of defendant's points was included in defendant's motion for new trial and, accordingly, none has been preserved for appellate review. Rule 29.11(d). In this court defendant requests "plain error" review. Rule 30.20.

▮▮▮ Plain error review requires that the defendant demonstrate error amounting to manifest injustice. *State v. Berry*, 609 S.W.2d 948, 953[14] (Mo. banc 1980); *State v. Mosley*, 728 S.W.2d 237, 238[1] (Mo.App.1987). Error alone, not resulting in manifest injustice, does not constitute plain error. *State v. Dudley*, 724 S.W.2d 517, 521[7] (Mo.App.1986). When guilt is established by overwhelming evidence, no injustice or miscarriage of justice will result from a refusal to invoke the plain error rule, *State v. Goode*, 721 S.W.2d 766, 770[5] (Mo.App.1986). The plain error rule is not to be routinely invoked, *State v. Matney*, 721 S.W.2d 189, 191[2] (Mo.App.1986), and should be used sparingly. *State v. Lulkowski*, 721 S.W.2d 35, 39[12] (Mo.App. 1986).

Defendant does not challenge the sufficiency of the evidence to support the verdict. The state's evidence showed that on March 1, 1986, defendant, the victim Elijah Jackson, and several other men and women were at the three-room apartment of Marie Bolin in Poplar Bluff. Defendant arrived at the apartment at approximately 4:00

p.m. He had in his possession a .357 magnum revolver which he displayed to several of the people present and offered to sell for $100. Defendant took the bullets out of the gun and passed it around for the other people to see. Defendant put the bullets in his pocket. After the gun had been inspected by the others, defendant made the remark that he probably should not sell it and that he might have to use it on somebody.

Marie Bolin testified that while defendant was showing the gun, victim Jackson was "passed out and asleep. After Cassie unloaded the gun, I guess Cassie was playing with him. Cassie waved it in Jackson's face and Jackson woke up and told him not to do it any more. Cassie said, 'Nigger, I'll shoot you quick.' After Cassie said that, there was no other altercation between the two of them. They did not fight or anything like that."

Defendant then went into the adjoining room where he made two telephone calls, one which he dialed himself and one which Joe Warren dialed for him. Defendant was in the "phone room" about fifteen minutes.

Patsy Hicks testified that "after Cassie got off the phone, Cassie was sitting there with his head down and Jackson had been asleep. Jackson woke up and looked in there where Cassie was sitting and Jackson said, 'Cassie is going to keep messing around,' and then started to go back to sleep. Cassie got up and came into the front room and said, 'You m_____ f_____,' and he pulled out the gun and shot him. Cassie pointed it directly at Jackson and called him that name. Cassie was about three or four feet from Jackson at the time of the shooting."

Patsy Hicks also testified that there were "some beer cans in the room, probably some beer cans around Jackson right before he was shot. There were some other whiskey bottles and other things containing alcoholic beverages around Jackson and anywhere else in the room."

1. Unless otherwise indicated, all references to statutes are to RSMo, 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

The state's evidence also showed that Jackson died almost immediately from a wound through the neck.

Defendant's first point is that the trial court "plainly erred in excluding evidence of defendant's *voluntary* intoxication," in violation of defendant's due process rights, "by precluding the jury from considering evidence relevant to the issue of defendant's mens rea in that the statute defining second degree murder required defendant to act knowingly or with purpose to cause serious physical injury to the victim, and evidence of defendant's intoxication raised a reasonable doubt as to whether defendant acted with such knowledge or purpose." (Emphasis added.)

Section 562.076.1, which became effective in its present form on October 1, 1984, reads:

"A person who is in an intoxicated or drugged condition whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is *involuntarily* produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct." (Emphasis added.)

In the trial court defendant's counsel, who does not represent him in the instant appeal, stated to the court, "Voluntary intoxication is not a defense to negate the element of purposely in murder, second degree." In the trial court defendant's counsel made no attack upon the validity of § 562.076.1 and, in effect, conceded its applicability. As the state points out, no adequate offer of proof was made with regard to defendant's intoxication, whether voluntary or involuntary.

The information charged defendant with murder in the second degree as defined in § 565.021.1, which reads, in pertinent part:

"A person commits the crime of murder in the second degree if he:

(1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; or ...

Section 562.016.2 reads:

"A person 'acts purposely,' or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result."

Section 562.016.3 reads:

"A person 'acts knowingly,' or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result."

■ Throughout his argument under his first point, defendant charges the trial court with error in excluding evidence of defendant's "voluntary intoxication." Assuming, arguendo, that a sufficient offer of proof of voluntary intoxication had been made, and one was not, defendant's argument seeks to induce this court to ignore the word "involuntarily" in § 562.076.1, supra. A prior version of that statute, which was enacted in 1977, (L.1977, S.B. No. 60, p. 662, § 1, Eff. Jan. 1, 1979), permitted voluntary intoxication, under certain conditions, to affect criminal liability and also permitted involuntary intoxication, under certain conditions, to constitute a complete defense. By reason of the amendment, in 1983, of § 562.076.1, supra, to its present form, voluntary intoxication no longer is a factor in gauging the criminality of conduct, including the issue of specific intent. See *Ingram v. State*, 686 S.W.2d 36, 37, fn. 2 (Mo.App.1985). Defendant's first point has no merit.

Defendant's second point is that the trial court committed plain error in failing to instruct the jury on voluntary and involuntary manslaughter, "since such instructions were supported by substantial evidence and the evidence presented a basis for a verdict acquitting defendant of second degree murder and convicted him of:

(a) Involuntary manslaughter, in that the jury could have found that defendant acted recklessly when he undertook a substantial and unjustifiable risk that he would cause the death of Elijah Jackson

by waving a gun in Mr. Jackson's face, and later by pointing a gun at Mr. Jackson even though defendant was unable to function properly, as evidenced by defendant's inability to dial a telephone and to look up a number in the telephone directory; or

(b) Voluntary manslaughter, in that the jury could have found that defendant was under the influence of sudden passion arising from defendant's telephone conversation and the victim's statement 'Cassie's going to keep messing around' at the time of the offense."

A person commits the crime of involuntary manslaughter if he recklessly causes the death of another person. § 565.024.-1(1). That form of involuntary murder is a lesser degree of offense of murder in the second degree. § 565.025.2(2)(b).

In a homicide case, "No instruction on a lesser included offense shall be submitted unless requested by one of the parties or the court." § 565.025.3. Subject to § 565.-025.3 and to another exception not applicable here, § 556.046 "shall be used for the purpose of consideration of lesser offenses by the trier in all homicide cases." § 565.-025.1.

Section 556.046.2 reads:

"The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

Defendant was charged and convicted of the conventional type of murder in the second degree. § 565.021.1(1), supra. It was that offense which was submitted to the jury, and the offense was committed after September 30, 1984. Under those circumstances, MAI–CR 2d 13.00, Supplemental Notes on Use, Note 4(B)(3) is applicable. Note 4(B)(3) reads, in pertinent part:

"(3) MAI–CR 2d 13.10 on involuntary manslaughter will be given
(a) if justified by the evidence, and
(b) if requested by one of the parties or on the court's own motion."

MAI–CR 2d 13.10 submits that form of involuntary manslaughter defined in § 565.024.1(1). In essence that instruction would have required the jury, if they did not find defendant guilty of murder in the second degree, to find him guilty of involuntary manslaughter if they found and believed from the evidence beyond a reasonable doubt that the defendant caused the death of Jackson by shooting him, and that defendant recklessly caused the death of Jackson. Further, the instruction MAI–CR 2d 13.10, based in part on § 562.016.4, would have told the jury:

"In determining whether the defendant recklessly caused the death of [Jackson], you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances."

Defendant's brief says:

"Defendant had waived a .357 magnum revolver in Mr. Jackson's face while he was sleeping. Defendant had passed the gun to other people in the room, indiscriminately allowing them to handle said gun. Further, defendant himself handled the gun and kept the bullets in his pocket, even though he was unable to dial a telephone or to look up a telephone number in a directory. These factors supplied evidentiary support for the submission of an instruction on involuntary manslaughter."

Defendant argues that certain evidence was in fact admitted on "the issue" of defendant's voluntary intoxication. Defendant alludes to evidence that there were beer cans and whiskey containers in the room where the shooting took place. Defendant mentions evidence that he asked Joe Warren to help him in dialing the telephone. He mentions that "several witnesses testified they had gone to the Bolin residence to drink beer and had been drinking that day.... Jackson, the victim, had passed out earlier in the day before he was shot."

Homicide cases involving offenses committed after October 1, 1984, when § 565.-024.1(1), supra, defining involuntary manslaughter became effective, include *State v. Newlon,* 721 S.W.2d 89 (Mo.App.1986); *State v. Stribling,* 721 S.W.2d 48 (Mo.App. 1986); *State v. Lett,* 715 S.W.2d 557 (Mo. App.1986); and *State v. Romesburg,* 703 S.W.2d 562 (Mo.App.1985). Each case involved an appeal from a conviction of murder in the second degree.

In *Newlon,* which contains a history of decisions dealing with the issue of whether a manslaughter instruction must be submitted in a murder case, the defendant requested an instruction on voluntary manslaughter. The evidence supported such an instruction and the trial court erred in not so instructing. In *Newlon* the error had been preserved and the court of appeals was not limited to plain error review.

In *Stribling* the trial court denied defendant's request to submit an instruction on voluntary manslaughter and the court of appeals found no error because there was no evidence to support the refused instruction.

In *Lett* the trial court was not requested to instruct on manslaughter. The court of appeals held that there was no evidence of "sudden provocation which renders the mind of the actor incapable of reflection and obscures his capacity to reason to such an extent as to indicate an absence of malice and premeditation, which are the elements of second degree murder." The lack of such evidence justified the failure to give the manslaughter instruction.

In *Romesburg* the trial court denied the defendant's request to instruct on manslaughter. The court of appeals held that the instruction was properly refused because there was no evidence of "the intentional killing of a human being in the heat of passion, on reasonable provocation, without malice and premeditation."

Although the opinions in *Lett* and *Romesburg* do not expressly so state, it seems clear that the instruction discussed in each case dealt with voluntary manslaughter.

■ In the case at bar, there was no evidence of mere recklessness on the part of defendant in causing the death of Jackson. The evidence was that defendant walked in the room and pointed the .357 magnum revolver directly at Jackson while the two men were three or four feet apart. Defendant called Jackson a dirty name and shot him. Such conduct transcends mere recklessness. There was nothing involuntary about it. It would be difficult to find stronger evidence of an intentional killing. Indeed defendant might properly have been charged with a higher degree of homicide than the one with which he was charged. Defendant's guilt of murder in the second degree was established by overwhelming evidence. There was no factual basis for a reasonable finding that defendant was not guilty of murder in the second degree but was guilty of involuntary manslaughter. No injustice or miscarriage of justice would result from a refusal to invoke the plain error rule even if it be assumed, arguendo, that the instant record would have supported a finding that defendant "recklessly" caused the death of Jackson. This court holds that the trial court did not commit plain error in not instructing the jury on involuntary manslaughter. Prong (a) of defendant's second point has no merit.

With regard to prong (b) of defendant's second point, § 565.023 reads, in pertinent part:

"1. A person commits the crime of voluntary manslaughter if he:

(1) Causes the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1, of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause; or

.    .    .    .    .

2. The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section."

Voluntary manslaughter under § 565.-023.1(1) is a lesser degree offense of murder in the second degree. § 565.025.2(2)(a).

Was there evidence that defendant caused the death of Jackson under the influence of sudden passion arising from adequate cause? If there was such evidence, the state's verdict director on conventional murder in the second degree, MAI–CR 2d 13.04 should have contained paragraph Third of MAI–CR 2d 13.04. See MAI–CR 2d 13.04, Notes on Use, Note 4. It did not, and defendant does not complain of the omission.

The terms "sudden passion" and "adequate cause" are defined, as applicable here, in MAI–CR 2d 33.01, as follows: "Adequate cause" means "cause that would reasonably produce a decree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." The same definition is contained in § 565.002(1). "Sudden passion" means "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." The same definition is contained in § 565.002(7).

Defendant's brief says: "Defendant was suddenly provoked by Jackson, and possibly by another acting in conjunction with Jackson during a 'phone conversation.' This provocation rendered defendant's mind incapable of reflection and obscured his capacity to reason ... Defendant immediately reacted to Jackson's statement and to the telephone conversation when he shot Jackson."

■ There was no evidence of the content of the two telephone conversations which defendant had. Of course Jackson was not a participant in either conversation. There was no showing of any relationship between Jackson and the person or persons with whom defendant had the telephone conversations. Even if it be assumed, arguendo, that Jackson's statement, "Cassie is going to keep messing around," may have caused sudden passion and constituted provocation, an exceedingly

doubtful assumption to say the least, there was no evidence that the sudden passion arose from "adequate cause." The statement attributed to Jackson would not *"reasonably* produce a degree of passion in a person of *ordinary* temperament sufficient to substantially impair an *ordinary* person's capacity for self-control."

There was no evidence to support the giving of an instruction on voluntary manslaughter and the trial court committed no error, plain or otherwise, in not giving such an instruction. Prong (b) of defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in submitting the state's verdict director, Instruction 6, because the instruction "made no mention of the elements of the charged offense, second degree murder: feloniously, willful, deliberate, or malice aforethought; and further, the language included in the instruction 'that it was defendant's purpose to cause serious physical injury' was so vague and ambiguous that it failed to adequately inform the jury as to what it was they must find true in order to convict appellant of second degree murder."

Instruction 6 was based on MAI–CR 2d 13.04 and was accurately drafted. Defendant's brief cites no case holding that MAI–CR 2d 13.04 is faulty. Defendant makes no complaint that the evidence is insufficient to support the verdict. No plain error appears. Defendant's third point has no merit.

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.