**STATE of Missouri, Plaintiff–
Respondent,**

**v.**

**Bret A. ARBUCKLE, Defendant–
Appellant.**

**No. 17094.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 11, 1991.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

John R. LePage, Evenson, Carlin & LePage, Pineville, David Post and Tim Morris, Fayetteville, Ark., for defendant-appellant.

MAUS, Judge.

Count I of an information charged that defendant Bret Alan Arbuckle committed murder in the first degree, § 565.020.1, on June 20, 1989, in that he did, after deliberation, knowingly cause the death of Angela Lyn Fortner by shooting her. Count II of that information charged that he committed the felony of armed criminal action, § 571.015.1, by committing the foregoing felony of murder in the first degree by the use of a deadly weapon. The trial court instructed the jury on murder in the first degree and conventional murder in the second degree, § 565.021.1(1), and armed criminal action in respect to each of those submissions. The trial court refused to give instructions on voluntary manslaughter, § 565.023.1(1), and involuntary manslaughter, § 565.024.1(1), tendered by the defendant. The jury found the defendant guilty of murder in the second degree and armed criminal action. He was sentenced to imprisonment for life upon the conviction for murder in the second degree and imprisonment for 30 years on the conviction for armed criminal action. The sentences were ordered to run consecutively. The defendant stated three points on appeal. Those points make necessary an outline of the circumstances which resulted in the tragedy.

Angela Lyn Fortner, Sonja Foust and Heather LaSalle were teenage girl friends who lived in the Miller vicinity. They decided that on the evening of June 19, 1989, they would camp on Billy Creek, a small stream near Sonja's home. Accompanied by Jeff Strahley, Angela's boyfriend, they set up a tent on the bank of the stream. They had chairs and other gear. Their supplies included some beer and peach schnapps. At about 5:30 p.m., the group drove to Miller for pizza. While in Miller, they saw Chesari Kleeman and Joey Burton. Those two were invited to the camp. Angela and Jeff were left at Angela's nearby home to cook the pizza. Sonja and Heather returned to the camp. About 30 minutes later, Angela and Jeff arrived at the camp in Angela's pickup with the pizza. Chesari and Joey did come to the camp. They left about 11:30 p.m.

At the time of the tragedy, the defendant was 22 years old. His parents lived in the vicinity of Miller. He had been reared in the area. He had graduated from high school and lived by himself in the community. He was employed at a warehouse. He and the girls were acquainted. He and Angela were distant cousins and had been friends. His grandmother lived near Everton. The defendant started drinking at an early age. He had a "drinking problem" and had been counseled for alcoholism.

On the evening in question, he encountered David Reynolds in Miller. While in Miller, the defendant displayed a 9–mm. automatic pistol. David Reynolds learned of the campsite from Chesari. The defendant, accompanied by David, drove his car to the campsite. They arrived about 11:45 p.m. after Chesari and Joey had left. The defendant was described as being very drunk, acting wild. He grabbed the bottle of peach schnapps from Sonja, drank from it and threw the bottle away. He waved his gun around and pointed it at first one person and then another. He was asked if the pistol was loaded and he replied that it was. Clicking noises were heard.

Shortly after the defendant and David arrived, Angela and Jeff left the campsite for a short time. While they were gone, the defendant said to David, "Let's just f— these two and leave", referring to

Sonja and Heather. Sonja was frightened and ran from the camp. The defendant chased and caught her. He said if she left he would shoot her. He brought her back to the camp.

Jeff and Angela returned. The girls loaded most of the camping gear in Angela's pickup. In order to leave, the girls got in the pickup. Angela could not find her keys. After a search for them on the ground, she got back into the pickup. She said to the defendant, "Do you have my keys?" She and the defendant exchanged words. The defendant pulled her out of the pickup and forced her against the side of the pickup. The verbal exchange continued. The defendant was heard to say, "Listen to me." The defendant, who weighed about 210 pounds, got a headlock on Angela who weighed about 90 pounds. He was holding her against the side of the pickup and placed the gun against her neck and said, "Shut up or I will shoot you." Angela was heard to say "No, no." The gun fired. The bullet went through Angela's neck and lodged in defendant's arm. Angela quickly bled to death.

Defendant ran to his car. There he told David that he believed he shot Angela. He told David to get in the car. Defendant drove off. He asked David which way he was headed. David said to Mt. Vernon. Defendant responded by saying he did not want to go that way. He drove to the grandmother's home near Everton. Along the way, defendant had David remove the clip from the pistol, unload the clip and throw the shells out the window. In response to the grandmother's call, the defendant's father and brother came to the grandmother's home. They took defendant to the hospital in Aurora where he was arrested.

Defendant testified at his trial. He related the history and extent of his alcoholism. He said that on the evening in question he had been drinking in Miller. He estimated that he drank in excess of 12 beers. He returned to his home. He could not remember leaving his home or meeting David. All he could remember of the events of the evening was the following.

"A. I remember—it was like I was leaning against something like a truck or something and I felt a blasting against my face and I'm pretty sure it was a gunshot. It was right in my face, and about the next thing I remember is that I was at my grandmother's house beating on the side of the house by the door." He testified that he did not commit the crime of murder in the first degree and was not aware his conduct was practically certain to cause the death of Angela. His testimony also included the following.

"Q. I want to know whether or not you coolly reflected and deliberated on it, coolly reflected and deliberated on it for any length of time, no matter how brief, *before that trigger was pulled.* A. No, sir.

Q. Are you negligent in this matter? A. Yes, I am.

Q. Are you reckless in this matter? A. Yes, I am.

Q. Are you careless in this matter? A. Yes, I am.

Q. Are you grossly negligent and careless and reckless the way you have acted in this whole thing? A. Yes, sir." (Emphasis added.)

The defendant's first point is that the trial court erred in refusing to give an instruction submitting his guilt of involuntary manslaughter, § 565.024.1(1). Such an instruction patterned upon MAI–CR 3d 313.10 was tendered by the defendant. The resolution of this point is governed by statute. The relevant parts of the applicable statutes provide:

"**First degree murder, penalty.**—1. A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." § 565.020.1.

"**Second degree murder, penalty.**—1. A person commits the crime of murder in the second degree if he:

(1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; ...." § 565.021.1(1).

"**Involuntary manslaughter, penalty.**—1. A person commits the crime of involuntary manslaughter if he:

(1) Recklessly causes the death of another person; ...." § 565.024.1(1).

"**Lesser degree offenses of first and second degree murder—instruction on lesser offenses, when.**—1. With the exceptions provided in subsection 3 of this section and subsection 3 of section 565.-021, section 556.046, RSMo, shall be used for the purpose of consideration of lesser offenses by the trier in all homicide cases.

2. The following lists shall comprise, in the order listed, the lesser degree offenses:

(1) The lesser degree offenses of murder in the first degree are:

(a) Murder in the second degree under subdivisions (1) and (2) of subsection 1 of section 565.021;

\* \* \* \* \* \*

(c) Involuntary manslaughter under subdivision (1) of subsection 1 of section 565.024;". § 565.025.1.2(1)(a), (c).

"**Conviction of included offenses.**— ... 2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2.

The latter subsection has been definitively construed:

"Section 556.046.2 limits the requirement of instructing down to those instances where there is some *affirmative evidence of a lack of an essential element* of the higher offense which would not only authorize acquittal of the higher but sustain a conviction of the lesser...." *State v. Olson,* 636 S.W.2d 318, 322 (Mo. banc 1982). (Emphasis added.)

Also see *State v. Green,* 778 S.W.2d 326 (Mo.App.1989); *State v. White,* 738 S.W.2d 590 (Mo.App.1987); *State v. Moore,* 729 S.W.2d 239 (Mo.App.1987).

The criteria by which the evidence is to be measured to determine if it meets that mandate include the following.

"Instructions must be based upon substantial evidence and the reasonable inferences to be drawn therefrom." *State v. Cole,* 377 S.W.2d 306, 308 (Mo.1964). Also see *State v. Daugherty,* 631 S.W.2d 637 (Mo.1982). That limitation of "reasonable inferences" has been stated in different terms.

"A defendant is entitled to an instruction on any theory which the evidence tends to establish. *State v. Shivers,* 458 S.W.2d 312, 316 (Mo.1970); and Rule 26.-02(6). In determining the degree of an offense which is to be considered by a jury a defendant is entitled to an instruction which is supported by the evidence and any inferences which *logically flow* from the evidence. *State v. Smith,* 518 S.W.2d 665, 669 (Mo.App.1975)." *State v. Saffold,* 563 S.W.2d 127, 129 (Mo.App. 1978). (Emphasis added.)

A basic limitation has received the following expression.

"Further, it is well established that 'the fact that a jury may disbelieve some of the evidence of the State, or decline to draw some or all of the permissible inferences, does not entitle the defendant to an instruction otherwise unsupported by the evidence,....' *State v. Achter,* 448 S.W.2d 898, 900 (Mo.1970)." *State v. Thompson,* 695 S.W.2d 154, 160 (Mo. App.1985). (Omission in original.)

Also see *State v. Olson,* 636 S.W.2d at 322.

It is fundamental that the evidence relied upon must have probative value.

"An instruction on a lesser included offense is required only if the evidence of *probative value* could form a basis of acquittal of the higher offense and a basis for conviction of the lower." *State v. White,* 738 S.W.2d at 592. (Emphasis added.)

A standard often applied is stated in the following terms.

"When there is strong and substantial proof of defendant's guilt of the offense charged, however, and the evidence does not reveal a lack of an essential element of this more serious offense, an instruction on the lesser or included offense is unnecessary. *State v. Hill,* 614 S.W.2d

744, 749 (Mo.App.1981); *State v. Harris*, 598 S.W.2d 200, 203 (Mo.App.1980); *State v. Laususe*, 588 S.W.2d 719, 721 (Mo.App.1979); *State v. Pride*, 567 S.W.2d 426, 431 (Mo.App.1978); § 556.-046.2, RSMo 1978." *State v. Martin*, 624 S.W.2d 879, 883 (Mo.App.1981).

■ To establish there was affirmative evidence for the acquittal of the defendant of murder in the second degree and which would sustain a conviction of involuntary manslaughter, the defendant relies upon evidence which falls in the following categories. Evidence that his conduct before Angela was shot was reckless. This includes evidence of bringing a pistol to the camp in a drunken condition. The fact that he waved and pointed the pistol at various persons before Angela was shot. To establish that the safety was in the "on" position, but recklessly moved to the "off" position, he cites the "clicking" noise that was heard. Without any evidentiary support, or citation of authority, he asserts that it was well known that when the trigger of a pistol is pulled and the safety is in the "on" position, it will make a "clicking" noise. This court is not aware of any foundation to take judicial notice of that assertion. It is equally, if not more probable, that in such circumstances when the trigger is pulled, it will make no noise whatsoever. In any event, the evidence of reckless conduct the defendant relies upon took place before he placed Angela in a headlock and put the pistol to her neck. His conduct before that time is not decisive. Cf. *State v. Tate*, 733 S.W.2d 45 (Mo.App.1987). This category of evidence lends no support to the defendant's first point.

■ The defendant next cites evidence of his extreme intoxication. It is not necessary to discuss the degree of his intoxication demonstrated by his ability to drive to the site, drive to his grandmother's, instruct David to dispose of the shells, and his action in hiding the gun. See *Smith v. State*, 755 S.W.2d 272 (Mo.App.1988). It is sufficient to observe:

"By reason of the amendment, in 1983, of § 562.076.1, supra, to its present form, voluntary intoxication no longer is a factor in gauging the criminality of conduct, including the issue of specific intent. See *Ingram v. State*, 686 S.W.2d 36, 37, fn. 2 (Mo.App.1985)." *State v. Tate*, 733 S.W.2d at 47.

■ He also relies upon inconsistencies in the testimony of Sonja, Heather, Jeff and David concerning details of the evidence of the tragic evening. Of similar import is his assertion of evidence that Heather did not hear the remark "Shut up, or I'll shoot you." The inconsistencies referred to do not refute the basic facts. That evidence does not constitute the required affirmative evidentiary basis to cause an instruction on involuntary manslaughter to be required. See *State v. Tate*, supra.

■ He next recites evidence to establish it was improbable he intended to kill Angela. Such evidence includes the fact they had been friends and were distant cousins. He argues that it was unlikely that he would commit murder in the second degree in front of four witnesses who could readily identify him. In the circumstances of this case, such evidence may suggest that the defendant reacted in an extremely foolish manner in determining to shoot Angela. It is sufficient to say that this category of evidence is not the affirmative evidence called for by *State v. Olson*, supra.

■ Finally, the defendant relies upon his testimony that he did not knowingly cause the death of Angela and did not know his conduct was practically certain to cause the death of Angela. Under the facts of this case, to recognize the defendant's testimonial denial as a basis requiring an instruction on involuntary manslaughter would be tantamount to reinstatement of the "automatic submission" doctrine.

■ Under the applicable statutes and cases cited above, an instruction on the lesser included offense of manslaughter is mandated only "where there is some affirmative evidence of a lack of an essential element" of murder in the second degree. *State v. Olson*, 636 S.W.2d at 322. Such requirement can be met only by substantial

evidence, *State v. Daugherty*, supra, or, stated another way, evidence with probative value. *State v. White*, supra.

The defendant's testimonial denial of intent must be measured against the facts. Under similar facts, a testimonial disavowal of an intent to kill has been held not to require an instruction on a lesser included offense.

> "For example, the protestation of a defendant who fired a rifle into an explosives truck 'that he did not intend to hurt anybody is no excuse and does not serve to reduce the crime from second degree murder to manslaughter.' *State v. Shuler*, 486 S.W.2d 505, 509 (Mo.1972)." *State v. Thompson*, Mo.App., 695 S.W.2d at 160.

> "Our cases hold that in criminal cases involving personal violence, where intention, motive and reason of the defendant are essential elements of the crime, the defendant may testify directly thereto. *State v. Chamineak*, Mo., 343 S.W.2d 153, 160–161[12]; *State v. Fletcher*, Mo., 190 S.W. 317, 321; *State v. Palmer*, 88 Mo. 568, 572. However, denial of intention to kill does not necessarily require an instruction for a lesser degree of the offense charged when 'the statements of defendant were so incumbered with the physical facts and conduct of defendant, so unreasonable and inconsistent with the experience of mankind * * *.' *State v. Nelson*, 118 Mo. 124, 23 S.W. 1088. See *State v. Musick*, 101 Mo. 260, 14 S.W. 212, 214–215; *State v. Turlington*, 102 Mo. 642, 15 S.W. 141, 146." *State v. Bevineau*, 460 S.W.2d 683, 688 (Mo. 1970). (Omission in original.)

Also see *State v. Green*, supra; *State v. Hamlett*, 756 S.W.2d 197 (Mo.App.1988). When so measured, defendant's professed denial does not constitute affirmative evidence of the character required for a basis for an instruction on the lesser included offense of involuntary manslaughter.

Moreover, the defendant's own testimony establishes that his disavowal does not mandate such an instruction. He repeatedly stated he had no memory of his actions leading to the firing of the pistol. His testimonial denial was nothing more than a repetition of his plea of not guilty and is not evidence of the character required to constitute affirmative evidence within the foregoing rule.

The facts in this case are comparable to those in *State v. Green*, supra. In that case, the court said:

> "The evidence shows defendant confronted victim in a public street with a shotgun, told him he was going to kill him and shot him in the head at a distance of twelve feet. Such conduct goes beyond recklessness. Although defendant testified he did not intend to kill victim, his conduct was a means likely to produce death and he is presumed to have intended that death follow his acts. *See Hamlett*, 756 S.W.2d at 201." *State v. Green*, 778 S.W.2d at 328.

The circumstances are also similar to those in *State v. Hamlett*, supra, in which the court stated:

> "Viewed by these standards, it is obvious, even from Hamlett's version of the events, that his conduct was not reckless, but was intentional. His attack on Stacy was deliberate, not accidental, and even if Hamlett, as he says, had no desire to kill Stacy, such a result followed. Since the assault, by fists and feet, was a means likely to produce death, Hamlett is presumed to have intended that death would follow his acts. *State v. Newbold*, 731 S.W.2d 373, 381–82 (Mo.App.1987)." *State v. Hamlett*, 756 S.W.2d at 200–201.

Finally, in *State v. Tate*, 733 S.W.2d at 49, involving a similar chain of events, the court concluded:

> "In the case at bar, there was no evidence of mere recklessness on the part of defendant in causing the death of Jackson. The evidence was that defendant walked in the room and pointed the .357 magnum revolver directly at Jackson while the two men were three or four feet apart. Defendant called Jackson a dirty name and shot him."

Also see *State v. Anderson*, 384 S.W.2d 591 (Mo. banc 1964).

The defendant's first point has no merit.

The defendant's second point is that the trial court erred in sustaining the state's motion in limine which barred him from making inquiries that he claims would have impeached the testimony of Jeff Strahley. That motion was based upon the allegations that such inquiry would be immaterial until "Defendant establishes a proper foundation for such testimony." The defendant never established that foundation.

Moreover, the order of the trial court sustaining the motion in limine was provisional. "A ruling on a pre-trial motion in limine is interlocutory and can be reversed during trial. (Citations omitted)." *State v. Wolfe*, 793 S.W.2d 580, 586 (Mo. App.1990). To establish that the refusal of the trial court to permit such inquiry was error, the defendant was required to offer the testimony referred to in the motion in limine at the trial. *State v. Hemphill*, 669 S.W.2d 633 (Mo.App.1984). The questions he proposed at the trial were not those barred by the motion in limine. He did not preserve his objection to the action of the trial court in sustaining the motion in limine. His second point is denied.

By the third point in his brief, the defendant argued that the charges of first degree murder and armed criminal action based thereon placed him in double jeopardy contrary to cited provisions of the constitutions of the United States and the state of Missouri. At oral argument, he conceded that in the light of *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the third point has no merit. The third point is denied and the judgment is affirmed.

FLANIGAN, C.J., and SHRUM, P.J., concur.