Don Paul RHODES, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 26166.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 3, 2005.

Motion for Rehearing or Transfer
Denied Feb. 25, 2005.

Application for Transfer Denied
April 5, 2005.

Elizabeth Unger Carlyle, Lee's Summit, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Lacey R. Searfoss, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Don Paul Rhodes ("Movant") appeals from the Circuit Court of Lawrence County's denial of his Rule 24.035 [1] motion for post-conviction relief. We affirm.

Movant pled guilty to second degree murder, pursuant to Section 565.021,[2] in accordance with a plea agreement for the killing of Judith A. Stanley ("Victim").

---

**1.** All rule references are to Missouri Rules of Criminal Procedure (2003) unless otherwise noted.

**2.** All statutory references are to RSMo (2000) unless otherwise noted.

Second degree murder carried a maximum sentence of twenty-five years, but pursuant to the plea agreement Movant was entitled to attempt to reduce the sentence by argument to the plea court. He was sentenced to twenty-two years.

## I. FACTS

Movant lived in Miller, Missouri with his wife, Wanda Rhodes ("Wanda"), Victim's mother. On April 3, 2001, Victim came to Movant's home to obtain money Wanda had agreed to lend her for the purpose of paying closing costs on a house she was purchasing. Victim and Wanda were sitting in the kitchen, drinking coffee and eating donuts, when an argument erupted between Victim and Movant. Movant accused Victim of taking her mother's money and refusing to work. Movant left the kitchen after threatening to kill Victim, went into a bathroom in his house, and retrieved a .38 caliber pistol. Victim went out onto the back porch after Wanda, fearing for her daughter, asked her to leave. Movant, now armed with the pistol, came out of another door to the house and blocked Victim's only exit from the porch. The State claimed, in its statement of what it believed the evidence would show, that Movant killed Victim by shooting her twice. The State also would have presented evidence that Movant told Victim, "I'm going to kill you." Movant claimed, at the evidentiary hearing on his Rule 24.035 motion, that he had no intention of shooting Victim and only wanted to scare her. He claimed that Victim pushed and shoved against him when he appeared with the gun and it discharged, hitting Victim. Movant then claimed that he lost his balance and fell down, hitting his hand on a railing and discharging the gun a second time.

The officer who arrived after Wanda's 911 call found Movant standing by the roadway. Victim was pronounced dead at the scene after being found on the porch, with no pulse. The officers arrested Movant after finding a .38 caliber pistol in the house, with two spent rounds in the cylinder. After being read his Miranda warnings, Movant made a statement to the officers that he shot Victim on the back porch but gave no other explanation of what happened, nor did he make any claims of self-defense. Movant, at the hearing on his Rule 24.035 motion, claimed to have told the officers that he fell down at the time of the second shot and never intended to shoot Victim.

A pathologist conducted an autopsy on Victim's body and determined that she had been shot twice, once near the collar bone on her right side and once above her left breast, with the bullet traveling through her heart and lungs before lodging in her liver. The pathologist could not determine which shot was fired first. From the angle of the shots, it appeared that Victim was bending over when she was hit with one of the bullets.

At the plea hearing, Movant filed a petition to enter a plea of guilty where he stated that he had no complaints about his attorney, he had received no promises about what the plea court would do if he pled guilty, and that he was pleading guilty, of his own free will, because he was in fact guilty. Movant affirmed these statements at the plea hearing as well as stating that he understood he was entitled to a trial by jury and that by pleading guilty he was waiving this right and the rights that accompany a trial. In the plea court's Rule 29.07(b)(4) examination of Movant, he once again verified that he had no complaints with his attorney and affirmed many of the same statements he made above.

Movant filed a motion for post-conviction relief pursuant to Rule 24.035 which was

later amended. After an evidentiary hearing, the motion court issued its findings of fact and conclusions of law denying Movant's motion. This appeal followed.

## II. STANDARD OF REVIEW AND STANDARD FOR FINDING INEFFECTIVE ASSISTANCE OF COUNSEL

■ We review the denial of a motion for post-conviction relief only to determine whether the findings of fact and conclusions of law of the motion court were clearly erroneous. *Schuerenberg v. State,* 98 S.W.3d 922, 923 (Mo.App. S.D.2003); Rule 24.035(k). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Schuerenberg,* 98 S.W.3d at 923.

■ Movant presents two points on appeal, both of which claim ineffective assistance of his plea counsel. "A criminal defendant seeking post-conviction relief based on ineffective assistance of counsel must demonstrate that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances and that he was thereby prejudiced." *Graham v. State,* 11 S.W.3d 807, 810 (Mo.App. S.D.1999) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). When the movant's conviction was the result of a guilty plea, "a claim of ineffective assistance of counsel is immaterial except to the extent that it infringes upon the voluntariness and knowledge with which the guilty plea was made." *Id.* (citing *Wilkins v. State,* 802 S.W.2d 491, 497 (Mo. banc 1991), *cert. denied,* 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991)). Movant must show that the guilty plea "was not the product of an intelligent or knowing act." *Cole v. State,* 2 S.W.3d 833, 835 (Mo.App. S.D.1999). "Prejudice is proven by evidence showing a reasonable probability that, but for counsel's errors, the claimant would not have [pled] guilty." *Rollins v. State,* 974 S.W.2d 593, 595 (Mo. App. W.D.1998). "If the [movant] fails to satisfy one of the two prongs of the *Strickland,* test, we are not compelled to address the other prong and the claim of ineffective assistance of counsel must fail." *Dorsey v. State,* 113 S.W.3d 311, 314 (Mo.App. S.D.2003).

## III. MOVANT'S FIRST POINT ON APPEAL

■ Movant claims that the motion court erred in finding that he received effective assistance of counsel because his plea counsel failed to inform him that he could submit a proposed jury instruction on the lesser included offense of involuntary manslaughter. He contends that because of such failure, his plea was not knowingly and voluntarily made.

A person commits involuntary manslaughter when he or she recklessly causes the death of another person. Section 565.024. A person acts recklessly when "he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4. Involuntary manslaughter is a lesser included offense of murder in the first degree. Section 565.025.2(c). Before the court may instruct on a lesser included offense, there must be "a basis ... for acquitting the defendant of the offense charged and convicting him of the included offense." Section 556.046.2.

John Woodard ("Woodard"), Movant's plea counsel, testified at the evidentiary

hearing that he discussed with Movant the possibility of an instruction on involuntary manslaughter. Woodard's opinion was that it was unlikely that Movant would have been entitled to such an instruction based on the probable evidence in the case, which included the fact that two shots were fired, that Movant said, "I'm going to kill you," and that the medical examiner's testimony as to the angle of the bullets, along with the height of the porch railing, would contradict and be totally inconsistent with Movant's explanation for how the shooting occurred. He believed it was in Movant's best interest to accept the plea bargain because the State would have proceeded to trial on first degree murder and armed criminal action, carrying the risk of a life sentence without parole.

■ Movant testified at the evidentiary hearing that he had not been informed about the possibility of a jury instruction on involuntary manslaughter, and that had he known of it, he would not have pled guilty. His only basis for an instruction on involuntary manslaughter at trial would have been his testimony that he did not intend to kill Victim and his explanation of how both shots were the result of an accident. However, testimony by the defendant that he or she did not intend to kill the victim does not automatically require an instruction for involuntary manslaughter. *State v. Arbuckle*, 816 S.W.2d 932, 936–37 (Mo.App. S.D.1991). "The defendant's testimonial denial of intent must be measured against the facts." *Id.* at 937.

The motion court, in its findings, noted Movant's testimony that the evidence would have shown that two shots were fired at Victim; that in order to obtain the weapon, he had to go from the living room through a bedroom and into a bathroom; that he had to get the pistol from a cabinet drawer, walk back through the bedroom into the living room, through the kitchen,

through the utility room and then to the back porch where Victim was shot twice; that the evidence would have shown that Movant said to Victim, "I'm going to kill you;" and that the time lapse between the threat and the shooting would have established a period of deliberation. The motion court also noted the lengthy experience of plea counsel in defending criminal cases and his testimony that, based on the anticipated testimony of the pathologist and the other evidence referred to above, while he could have asked for a lesser included offense instruction of manslaughter or involuntary manslaughter, he did not believe that the court would have been required to give it.

■ It was the conclusion of the motion court that Movant's testimony that he would not have pled guilty if he had known of the possibility of such an instruction was not credible. In this regard, "[t]he motion court is free to believe or disbelieve the evidence, whether contradicted or undisputed, and including the movant's testimony." *State v. Landers* 969 S.W.2d 808, 812 (Mo.App. W.D.1998). We defer to the motion court's determination of witness credibility. *Waters v. State*, 128 S.W.3d 648, 652 (Mo.App. S.D.2004).

The motion court also found that Movant failed to establish that he would have been entitled to an instruction on involuntary manslaughter if he had gone to trial, and that there was nothing in the record to support his contention that his plea was not voluntarily and intelligently entered. Accordingly, the motion court found that Movant had failed to establish that an involuntary manslaughter instruction would have been available in this case, and that he had failed to demonstrate prejudice based on his allegation that he had not been informed of the possibility of such instruction. We are unable to conclude that

the motion court's findings were clearly erroneous.

■ Movant also argues in his brief that if Woodard talked to him about the possibility of an instruction on lesser included offenses, he did not understand the concept and was not informed of the consequences of his plea. In response, the State contends that we do not have jurisdiction to review this part of his claim as it was raised for the first time on appeal. In his amended motion for post-conviction relief, Movant did not claim that he lacked understanding of his counsel's advice on the possibility of an instruction for involuntary manslaughter. Movant alleged only that his counsel did not inform him of the possibility of an instruction at all. When the movant fails to raise an argument in his Rule 24.035 motion or amended motion, that argument is waived. *Dean v. State,* 950 S.W.2d 873, 877 (Mo.App. W.D.1997). "Claims that have not been presented to the motion court cannot be raised for the first time on appeal." *Id.*

Based on the applicable standard of review, Movant is entitled to no relief under this point. Movant's first point is denied.

## IV. MOVANT'S SECOND POINT ON APPEAL

Movant also claims that he was denied effective assistance of counsel because Woodard erroneously informed him that he would be eligible for parole at seventy years of age. Movant testified at the hearing that Woodard told him that he would be paroled when he reached seventy years of age.[3] He has since learned that the earliest he will be eligible for parole is age seventy-three. Movant stated that had he known this at the time, he would not have pled guilty.

Earl Rhodes, Movant's cousin, testified at the hearing, stating that Woodard told Movant that he would be paroled at age seventy. The evidence also included a letter, however, sent to Movant by Woodard telling him that he should not accept the plea bargain on the basis of Woodard's belief as to parole because that was a matter strictly up to the Missouri Board of Probation and Parole, and that according to statute, Movant would be eligible for parole after serving forty percent of his sentence and obtaining the age of seventy. It also stated that a representative of the parole board believed Movant would serve ten to twelve years in prison. Movant admitted that he had seen the letter and that it contained his signature on the second page acknowledging that he received it.

The motion court found that Woodard did not promise Movant that he would receive parole at age seventy. Furthermore, it did not find Movant's testimony credible that he would not have pled guilty if he had known that he would not be paroled at age seventy in light of the fact that he was facing a possibility of life without parole.

Movant argues that the letter written by Woodard does not make it clear that he would not be paroled at age seventy. He also claims that he was incapable of performing the calculation necessary to determine from the letter that he would not be eligible until age seventy-three. In a similar vein, Movant claims that due to his limited education and experience with the legal system, he was forced to rely heavily on Woodard's advice, and since this advice was incorrect, his plea was involuntary.

The State contends that Movant's allegations regarding his lack of education and experience with the criminal justice system

---

**3.** At the time of the plea, Movant was sixty- five years old.

were raised for the first time on appeal, and, therefore, should not be considered. It also argues that Woodard's letter to Movant is clear and does not promise that Movant would receive parole by a certain age. Finally, the State claims that Movant was not prejudiced because of the motion court's credibility determination as to his testimony that he would not have pled guilty had he known that he would not be paroled at age seventy.

■ It is true that when counsel actively misinforms the movant of the amount of a sentence that the movant will likely serve, the voluntariness of the plea could be affected. *Beal v. State*, 51 S.W.3d 109, 112–113 (Mo.App. W.D.2001). However, incorrect advice does not automatically undermine the voluntariness of a plea. *Jones v. State*, 966 S.W.2d 340, 343 (Mo.App. S.D.1998). Here, there was not incorrect advice. Woodard's letter to Movant accurately described Section 558.019.3, stating that he would not be eligible for parole until he completed forty percent of his sentence and reached the age of seventy. The letter also clearly stated that Woodard had no control over the Missouri Board of Probation and Parole and that Movant should not accept the plea agreement based on Woodard's belief as to parole. Finally, by the letter's own estimate, Movant would serve ten to twelve years, which considering that he was sixty-five at the time of the plea, would have meant his incarceration until age seventy-five at a minimum. Movant also admitted that he had seen and signed his name to the letter. The motion court did not clearly err in finding that Woodard did not promise Movant he would receive parole at age seventy.

The motion court also did not find Movant's testimony regarding his willingness to go to trial, even if he had not been assured of parole by age seventy, to be credible. As noted above, we defer to the motion court's determination of witness credibility. *Waters*, 128 S.W.3d at 652.

■ We cannot review Movant's claim that he did not understand Woodard's letter and that his lack of education and experience with the criminal justice system caused his plea to be involuntary because this argument was not presented to the motion court in Movant's Rule 24.035 motion or amended motion. *See Dean*, 950 S.W.2d at 877. Movant's amended motion only makes the claim that Woodard promised him that he would receive parole at age seventy, not that he did not understand the information Woodard gave him. Furthermore, there was no testimony at the evidentiary hearing supporting Movant's present claim that he did not understand the letter.

Movant's second point on appeal is denied. The motion court did not clearly err in denying Movant's motion for post-conviction relief. Its judgment is affirmed.

PREWITT, J., and RAHMEYER, J., concur.