**George FOGLE, Movant–Appellant**

v.

**STATE of Missouri, Respondent.**

No. 26969.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 21, 2006.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

George Fogle (movant) pleaded guilty, pursuant to a negotiated plea agreement, to the class C felony of stealing by deceit. *See* § 570.030, RSMo Cum.Supp.1998. He was sentenced to seven years' imprisonment to run concurrent with other sentences. Following his incarceration, mov-

ant filed a motion for post-conviction relief as permitted by Rule 24.035. Counsel was appointed and an amended motion filed. An evidentiary hearing was held. Findings of fact and conclusions of law were filed and judgment was entered denying the motion. This court affirms.

Movant presents one point on appeal. He contends that the motion court erred in denying his Rule 24.035 motion because he received ineffective assistance of counsel. He argues that the counsel who represented him in the underlying criminal case "misadvised [him] as to the effect of his guilty plea on his parole eligibility when counsel told [him] that a concurrent seven year sentence 'would not hurt him,' but in fact his earliest release date was extended from 2005 to 2008 as a result of the plea." Movant asserts that this rendered his plea of guilty involuntary; that "without this misadvise, [he] would have chosen to go to trial rather than plead guilty."

The motion court found:

Movant was charged by indictment with stealing by deceit. A substitute information was subsequently filed alleging one count of stealing by deceit and one count of forgery. On October 5, 2001, ... movant entered a plea of guilty to the stealing charge and after waiving a pre-sentence investigation was sentenced pursuant to the negotiated plea agreement to 7 years [sic] incarceration to run concurrently with any other sentences. The forgery count was dismissed. . . .

It concluded:

The issue presented is whether counsel affirmatively misadvised movant of a collateral consequence of pleading guilty and whether movant relied on that misrepresentation in deciding to plead guilty.

The evidence reflects that movant was represented in this matter by Joseph Passanise, who met with movant and conducted all negotiations and was present at the time of the plea. Movant advised his attorney during the initial consultation that because of his prior remands he believed that he would be required to serve 80% of any sentence he received on this Greene County case. Movant testified he told counsel that he had been to DOC in 1976, 1987 and gain [sic] in 2001. He was serving the 2001 sentence while awaiting disposition of this Greene County case.

The best offer that counsel could obtain from the state was for 7 years on the stealing charge concurrent with whatever else he was serving. Counsel testified that he never promised nor told movant how much time he would have to serve under this plea offer. He denied ever telling movant that the 7 year sentence would not hurt him any. According to State's exhibit 1A, counsel relayed the 7 year offer to movant in writing on September 16, 2001 with a warning that it would expire if not accepted by September 25, 2001. It also contained a reminder from counsel that, "We have no idea how much time you will do with a 7 year sentence."

The motion court further found that a letter to movant from movant's trial counsel dated October 9, 2001, confirmed the terms of the plea agreement pursuant to which movant pleaded guilty. The motion court's findings stated that information obtained from the Department of Corrections prior to when movant pleaded guilty revealed that movant's conditional release date was November 14, 2005, and his maximum release date was March 14, 2008. The letter stated, "We believe the 7 year sentence running concurrent with your existing sentences will not hurt you considering the fact that you are looking at staying in prison until 2005."

The motion court observed that an amended information was to be filed if movant had chosen not to plead guilty that "would cause [movant] to face enhanced sentencing based on his prior record should the case go to trial." The motion court found that movant's trial counsel was employed for the specific purpose of getting the best deal he could for movant; that this was what occurred. The motion court concluded "that [c]ounsel's attempts to provide predictions to [movant] about the consequences of his plea simply was [sic] not the basis for movant's pleading guilty."

▆▆▆ This court's review is limited to a determination of whether the findings of fact and conclusions of law of the trial court are clearly erroneous. *Rhodes v. State*, 157 S.W.3d 309, 312 (Mo.App.2005). *See* Rule 24.035(k). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Schuerenberg v. State*, 98 S.W.3d 922, 923 (Mo.App.2003). "A criminal defendant seeking post-conviction relief based on ineffective assistance of counsel must demonstrate that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances and that he was thereby prejudiced." *Graham v. State*, 11 S.W.3d 807, 810 (Mo.App. S.D.1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). When the movant's conviction was the result of a guilty plea, "a claim of ineffective assistance of counsel is immaterial except to the extent that it infringes upon the voluntariness and knowledge

with which the guilty plea was made." Id. (citing *Wilkins v. State*, 802 S.W.2d 491, 497 (Mo.banc 1991), *cert. denied*, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991)). Movant must show that the guilty plea "was not the product of an intelligent or knowing act." *Cole v. State*, 2 S.W.3d 833, 835 (Mo.App. S.D. 1999). "Prejudice is proven by evidence showing a reasonable probability that, but for counsel's errors, the claimant would not have [pled] guilty." *Rollins v. State*, 974 S.W.2d 593, 595 (Mo.App. W.D.1998). "If the [movant] fails to satisfy one of the two prongs of the *Strickland* test, we are not compelled to address the other prong and the claim of ineffective assistance of counsel must fail." *Dorsey v. State*, 113 S.W.3d 311, 314 (Mo.App. S.D.2003).

*Rhodes v. State, supra.*

▆▆▆ Movant's trial counsel told the motion court that when movant was first interviewed in his office in May 2001, the interview was tape recorded and movant was provided with a copy of the transcript of that interview. A part of that transcript appears to have been admitted in evidence as Movant's Exhibit No. 6.[1] In it movant expressed concerns that he would be required to serve 80 percent of any sentence that would be imposed in his pending case in Greene County, the case that generated the plea of guilty to which this Rule 24.035 proceeding was directed. He was concerned that this would be required because he had served three previous prison sentences. Mr. Passanise was asked the following questions about that discussion and gave the following answers:

Q. In this particular portion of this [movant] set out to you his concerns

---

1. Movant's Exhibit No. 6 was not deposited with this court. The transcript of the hearing before the motion court reflects that Mr. Pas-

sanise was shown the exhibit and stated it "appear[ed] to be a couple of pages" from his firm's initial interview with movant.

back in May of 2001 that he was going to have to do 80 percent—

A. Yes, sir.

Q.—of anything he got out of this Greene County sentence, is that correct?

A. Yes, sir.

Q. And did he also advise you of the various times he's been in prison previously?

A. Yes, sir.

Q. And when were those?

A. '76 and '87, and 2001.

Q. So in May of 2001 you were aware that he'd been to prison three different times?

A. Yes, sir.

Q. So you were aware that this 80 percent was going to apply to whatever you gave him or whatever you could get him out of the Greene County case?

A. Yes, sir. And I assume [movant] knew that too when we talked.

Movant's trial counsel was asked about conditional release. He explained that its application was set by statute, § 558.011, RSMo 2000; that there was no discretion with the trial court in that regard. He acknowledged that he should have been aware that § 558.011.4 does not permit conditional release time for persons who are serving a fourth or subsequent remand to the department of corrections.

On cross-examination, movant's trial counsel explained the interaction between him and movant with respect to the negotiation of a plea agreement in the underlying criminal case. The assistant prosecutor asked Mr. Passanise the following questions and he gave the following answers:

Q. Mr. Passanise, did you make any representations to [movant] regarding his conditional release date?

A. No, ma'am.

Q. Was that ever any part of your discussion with [movant]?

A. My recollection of events is, is [movant] already knew because he was telling me that whatever the number of years that he would get on this Greene County case he was going to be doing a percentage of that time. And I kept telling [movant], "My focus [movant] is on the Greene County case and that is, if you want to plead guilty or if you want to go to trial."

And he kept wanting me to try to get it down like I said before, to three or four years, the prosecutor would not do that. And I came back to him and I told him and we had discussions of that very, very fact.

By letter dated September 16, 2001, movant's trial counsel relayed a negotiated plea offer to movant that stated:

We finally heard back from the prosecuting attorney on September 12, 2001 regarding your felony case. She made a plea offer in your case. This offer is not a great offer but we are forwarding it to you nonetheless.

1. She is asking you to plead guilty to each count.

2. A 7 years [sic] sentence in the Department of Corrections.

3. The sentences will run concurrent with each other and with your present sentence.

4. Probation denied.

5. She does not want you to be sentenced under the 120 day treatment program or the long term treatment program.

The prosecutor's [sic] indicated she will writ you back from the Department of Corrections on September 26, 2001. If you do not take this offer by that date then all offers are revoked.

We wanted to get that offer to you as quickly as possible so you had some time to think about it. Again it is not the greatest offer. We have no idea how much time you will do with a 7 year sentence. The prosecutor is asking it to run concurrent with your present sentence.

. . .

The letter further stated that some correspondence movant had sent indicated that movant was not guilty of the pending charges; that he had done nothing wrong. Movant was told that if that was the situation, movant could not plead guilty; that his attorneys could not ethically take him before a judge and plead him guilty of a crime he was telling them he did not commit. Movant was advised that if he were guilty and did not take the offer, and if the offer was withdrawn on September 26, 2001, the case would be set for trial.

On October 5, 2001, movant appeared in the Circuit Court of Greene County and pleaded guilty to the offense of stealing by deceit pursuant to a negotiated plea agreement. The prosecutor advised the trial court regarding the terms of the agreement:

Judge, [movant] is charged in two counts: Count I was stealing by deceit, and Count II, forgery. The plea agreement is, as to Count I, [movant] would be sentenced to seven years in the Department of Corrections. Probation would be denied on that count. That sentence would run concurrent with any other sentence or present sentence he is serving.

Count II is to be dismissed at the time of sentencing. There is to be no sentence under 559.115 or 217.362. And [movant] is to receive credit for all time served since he was arrested on the warrant in this case.

Movant's trial counsel acknowledged that the statement by the prosecutor was a correct statement of the terms of the agreement. He further acknowledged that movant would waive presentence investigation and be sentenced that day.

During the trial court's inquiry of movant, it read Count I of the information to movant and inquired as to the range of punishment. The prosecutor replied that the offense was a Class C felony; that "[t]he range is one day to one year in the county jail, one year to seven years in the Department of Corrections, and/or a fine up to $5,000." She continued, "I would note, had [movant] chose not to plead today, accept a plea offer, the State was prepared to add the prior persistent status because [movant] is a prior and persistent felon, and if that had been added, he would be facing up to 20 years on that one count."

Movant acknowledged that he understood the charge to which he was pleading guilty. In response to questions by the trial judge, movant acknowledged that he had had sufficient opportunity to discuss his case with his lawyer; that he had told his lawyer everything the lawyer needed to know about the case. Movant stated he had not withheld anything from his lawyer; that he was satisfied with his lawyer's services. He stated he was aware he had a right to a trial if he chose, either a jury trial or a judge trial.

Following further questioning and a recitation of facts that the state intended to prove if there was a trial, movant was asked if, except for the plea agreement that had been stated, there had been other promises made to him to encourage him to plead guilty or if he had been threatened in any way. He replied, "No, sir." The trial judge granted allocution and imposed sentence.

At movant's guilty plea hearing, he was advised of his rights to seek post-conviction relief, after which further inquiry was made as to movant's satisfaction with the services provided by his attorneys. He was asked if he had any complaints about the services his attorneys had provided. He answered, "No, sir, not a one." Following the inquiry, the trial court found that there was no basis for ineffective assistance of counsel.

At movant's Rule 24.035 hearing, movant's counsel inquired of Mr. Passanise concerning a letter dated October 9, 2001, that summarized the events of October 5, 2001. The letter acknowledged that movant's case was resolved on October 5; that he received a seven-year sentence that would run concurrent with the sentence he was already serving. It concluded with a paragraph that stated the lawyers' office had contacted the Department of Corrections September 27, 2001; that at that time, movant's conditional release date had been November 14, 2005, and his maximum release date was March 14, 2008. The letter stated that his attorneys had no control over the calculation of the release dates. It concluded with a statement that "[w]e believe the seven year sentence running concurrent with your existing sentences will not hurt you considering the fact that you are looking at staying in prison until 2005."

Mr. Passanise did not recall making the statement that the seven years running concurrent would not hurt movant. He told the motion court that movant was consistently told that his lawyers could not tell him specifically how much more time he would serve upon pleading guilty in the Greene County case. He stated, "My concern to him quite frankly was, I did not want him to be filed on as a prior and persistent offender in which he would be looking at a significant amount more time

in the neighborhood of 20 to 30 years." He stated that leading up to the October 5 guilty plea hearing, he did not "rely on advising [movant] on how much this sentence would affect him" insofar as his release date was concerned. Movant's counsel pointed to the October 9 letter. Mr. Passanise responded, "Yes, sir, even though I set that out in my October 9th letter. Our concern on the Greene County case was to get the best plea agreement that I could for him and Mr. Wampler could get for him. That's what the family wanted, that's what [movant] wanted."

The October 9 letter on which movant relies in asserting he was affirmatively misadvised of a collateral consequence of pleading guilty occurred after the plea of guilty was entered. There was no showing that the representation of how long movant could expect to be confined if he pleaded guilty was made prior to the entry of the guilty plea. The October 9 letter was sent to movant after he pleaded guilty and after he was sentenced. As such, it is a *non sequitur*.

■ Regardless, even if the statement had occurred at a time prior to the entry of the plea of guilty, the motion court's finding that counsel was employed to negotiate the best plea agreement possible for the Greene County case and that this is what occurred is not clearly erroneous. If movant's trial counsel was deficient in representations to movant regarding projected release dates, a finding the motion court did not make and this court does not make, the motion court's conclusion that "attempts to provide predictions to [movant] about the consequences of his plea simply was [sic] not the basis for movant's pleading guilty" dispels that movant was prejudiced by those actions. That conclusion is not clearly erroneous. Movant has not provided evidence showing a reasonable probability that, but for such predic-

tions, he would not have pleaded guilty. Movant's point is denied. The judgment dismissing his Rule 24.035 motion is affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.